THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD GOINES, Defendant-Appellant.

(No. 11851; )

Fourth District—July 17, 1974.

Michael A. Pope and Richard A. Seltzer, both of Chicago, for appellant.

Lawrence E. Johnson, State's Attorney, of Urbana (James R. Burgess, Assistant State's Attorney, and L. Keith Hayes, Jr., Senior Law Student, of counsel), for the People.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

The defendant was found guilty of armed robbery in a jury trial and sentenced by the circuit court of Champaign County to a term of 5 to 15 years in the penitentiary. In this court, he contends (1) that he was denied a full and meaningful preliminary hearing, (2) that trial counsel was incompetent, (3) that the trial court erred in refusing to allow newly discovered evidence that a third person confessed to the crime, and (4) whether his guilt was established beyond a reasonable doubt.

■■ At the time of the occurrences, the defendant was 17 years of age and this court required supplemental briefs as to whether the Illinois

Juvenile Court Act in effect at that time (Ill. Rev. Stat. 1971, ch. 37, par. 701—1) denied equal protection of the law because of age variance between the sexes and was thus unconstitutional. In *People v. Ellis*, 57 Ill.2d 127, 311 N.E.2d 98, our supreme court laid this issue to rest and held that the Juvenile Court Act did not apply to males over 17 years of age.

■■ The preliminary hearing in which the defendant was bound over to the grand jury was based solely on hearsay testimony of the investigating police officer. The officer read from the police report the statement of Bruce Jacobs, an eyewitness who picked out a photograph of the defendant from a high school yearbook and the statement of one of the young ladies at the Dairy Queen who gave the robber $28, but could not identify the defendant immediately after the robbery nor at the trial. Mr. Jacobs and the young lady both testified before the grand jury. Jacobs was the only witness at the trial who identified the defendant and the three other eyewitnesses admitted that they could not do so. Since *Coleman v. Alabama*, 339 U.S. 1, 26 L. Ed.2d 387, 90 S. Ct. 1999, there can be no question but that the preliminary hearing may be a "critical" stage of a criminal prosecution and under the fourth amendment to the Constitution of the United States, a defendant is entitled "to have the assistance of counsel for his defense" and under section 1 of the sixteenth amendment to the Federal constitution, "no state may deprive a defendant of life, liberty, or property without due process of law or the equal protection of the law." The issue here is whether or not the use of hearsay testimony in a preliminary hearing may be properly used to establish (1) that a crime has been committed and (2) that there is probable cause to believe that the defendant participated in it. A preliminary hearing is not a full-blown trial. Its purpose is historically and specifically limited. The preliminary hearing is binding on no one. Article I, section VIII, of the Illinois constitution now gives the accused a right to a preliminary hearing when in conjunction with section 109—1 of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 109—1) the accused is arrested without a warrant. In this case, the preliminary hearing was held with the accused represented by counsel provided by his family. No objection was raised to the proceedings at the preliminary hearing and as a general proposition, a constitutional defect, if not noted in the lower court, is deemed waived. (*People v. Black*, 52 Ill.2d 544, 288 N.E.2d 376.) It is clear that the preliminary hearing is binding on no one and the State's attorney could have appropriately and properly submitted this case to the grand jury even though the preliminary hearing officer had found no probable cause as to the defendant.

Under these circumstances and under this record, we cannot classify this proceeding as "plain error" nor does this record remotely establish any prejudicial error to the defendant.

■■ The defendant asserts that the inadequacy of the attorney furnished by his family deprived him of a fair trial. Defendant supports this position by the following cases: *People v. Jackson*, 96 Ill.App.2d 99, 238 N.E.2d 234; *People v. McCoy*, 80 Ill.App.2d 257, 225 N.E.2d 123, and *People v. Odom*, 71 Ill.App.2d 480, 218 N.E.2d 116. The cases here cited are not comparable to the record before this court, nor to the harpoons cast by the defendant at defense counsel. It is first asserted that the defendant did not seek out pre-trial discovery techniques available to him and because he could have sought them out, he should have. There is nothing in this record that suggests any of the matters complained about or the failure to use them would have disclosed anything of any particular benefit to this defendant. The defense throughout was primarily alibi and identification. This resulted in a well-conducted presentation of witnesses as to alibi and effective cross-examination of Mr. Jacobs, who was the sole eyewitness who identified the defendant. It is urged that when the defense counsel in his motion for a new trial asserted for the first time that the atmosphere of the community was such that the defendant could not have a fair trial because of adverse newspaper publicity and the frequency of armed robberies in that area, it should have been presented in an application for change of venue prior to the trial. It is urged that this further demonstrates the ineptness of counsel. Appellate counsel has not seen fit to bring these items before this court and we assume that this point is either without merit or is waived. Trial counsel employed assistance in his motion for a new trial. It can well be said that there were many actions that could have been taken by the defense counsel which were not taken. There is not a scintilla of evidence in this case that had they been taken they would have been productive of anything bearing on the innocence or guilt of this defendant or upon the fairness of his trial. We cannot say from this record that the representation that this defendant had amounted either to such low representation or that it was such as to reduce the trial to a farce or deny the defendant a fair trial. *People v. Strader*, 23 Ill.2d 13, 177 N.E.2d 126.

■■ On the motion for new trial, the defendant testified to the following facts: That while in jail, Oliver Johnson admitted to him that he (Johnson) had committed this robbery, and that this statement was made in the defendant's presence and three other witnesses in jail on more than one occasion after defendant's trial. Before Johnson left he said he would testify for the defendant if he had a new trial. The motion

for new trial was continued and Oliver Johnson was returned to testify. When Johnson was returned to the trial court from the penitentiary, he claimed his constitutional privilege against self-incrimination. Defense counsel requested the State to give Johnson immunity from prosecution. The State refused. None of the other three people were summoned to testify, nor does this record show that they were available. In *People v. Archibald*, 129 Ill.App.2d 400, 263 N.E.2d 711, the court held that a witness who claims his right not to testify because of the fifth amendment makes that witness nonavailable within the terms of the exception to the hearsay rule. (*People v. Moscatello*, 114 Ill.App.2d 16, 251 N.E.2d 532; *People v. Lettrich*, 413 Ill. 172, 108 N.E.2d 488.) On this record the admission or statement by Johnson is pure hearsay.

The defendant contends that he was not proven guilty beyond a reasonable doubt. The basic evidence presented at the trial was the testimony of four eyewitnesses to the robbery. One young lady working behind the counter at the Dairy Queen testified that two Negro males, 17 or 18 years old, approached the counter. One of the men carried an 8- to 10-inch gun in his left hand. It was pointed at her and the money demanded. She put the money in a Dairy Queen bag and handed it to him and they then fled around the corner of the building. She also noticed that a white woman was standing 2 to 2½ feet to the gunman's left, that neither robber wore sunglasses, and she said nothing about a wig. She was not able to identify the defendant as one of the robbers. Her sister testified to substantially the same occurrence events. She, too, was working behind the counter and viewed the entire transaction. A lady customer testified that she was at the counter when the two Negro males approached it and pushed her to one side. She testified to the occurrence events just as the two girls had. She, likewise, could not identify the defendant. The witness Jacobs testified that he and his girl drove up and parked at the Dairy Queen and he noticed two Negro boys wearing what he described as Afro wigs and that one of the two boys wore sunglasses. As he walked toward the counter, he saw a girl hand the bag to one of the boys who then turned towards Jacobs, pointed a blue revolver at him and said, "Stay back." Jacobs testified that he immediately turned and started walking back to his car but then turned around to return to the counter. As he turned back towards the counter the robbers ran around the corner of the building. He further testified that he was within 4 to 8 feet of the robbers at one time or another. He further testified that he recognized the person with the gun as a fellow student at Centennial High School, although he did not recall his name at the time. He had not seen this fellow student since June of the same year. Jacobs told the girls at the Dairy Queen that

he knew the boy and likewise told the police the same thing. He was taken to the police station where he gave a statement and was there shown a high school yearbook from which he selected the picture of the boy he said he recognized as the robber with the gun. He pointed out the defendant as that boy.

Against this testimony, the defendant denied any knowledge of the robbery and presented the testimony of four witnesses tracing the defendant's whereabouts from early evening until about 12:30 or 1 the next morning. His father, mother and brother testified that he was home in bed at the time of the robbing. Their testimony likewise shows that the father and both boys were doing some janitor work at an insurance agency where the father worked part-time. They worked until sometime after 10 P.M. and went home together and Richard never left. This alibi testimony was partially corroborated by the owner of the insurance agency where Mr. Goines worked. He stated that he worked at the office on the night of the robbery and he remembered talking to Richard at about 9:45, just prior to making a long-distance call. He was not able to testify to the exact time the three left but when he left later, they were gone. The lady at the counter testified that the robbery occurred around 11 P.M.

■■ We have a situation here somewhat similar to our *People v. De-Armond*, 5 Ill.App.3d 831, 284 N.E.2d 474. We there held that we had a factual situation where the strength of the identification must be weighed against the strength of the alibi and that this determination was one for the jury based on witness credibility. We likewise held that one identifying witness is sufficient to convict if there is credible evidence to support it, even in the face of an alibi. The defendant correctly points out that there is a distinction between *DeArmond* and the case here. It is rarely that one finds a factual situation on all fours with another case. The sole question on this point is which group of witnesses should be believed. Perhaps the most significant factor so far as Jacobs is concerned is the fact that he thought he recognized the defendant and immediately communicated that information to one of the girls and to the police who arrived in a matter of minutes. There was no intervening time to fabricate, reflect, or develop any self-interest to prepare himself. In *DeArmond*, the sole eyewitness was quoted as stating in history class that she said, 'I don't really know for sure." Someone asked her, "How did you know it was him?" She said, "Well, it looked like him." We feel here as we felt there that the jury had the better opportunity to view, weigh, test and determine the credibility of the various witnesses. There were variations in the testimony as there frequently are. The trial court refused the new trial, a motion for directed

verdict, and a motion for judgment notwithstanding the verdict. Under such circumstances, the credibility of the witnesses must be the determining factor.

Accordingly, the judgment is affirmed.

Affirmed.

SIMKINS and CRAVEN, JJ., concur.