THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN D. LINDSEY (Impleaded), Defendant-Appellant.

First District (5th Division)    No. 62562

Opinion filed May 14, 1976.

Ackerman, Durkin & Egan, of Chicago (Allan A. Ackerman and John C. Egan, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Edward V. Vienuzis, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant, John Lindsey, was indicted with Jerry Smith and Waverly Williams for armed robbery and rape. Following a bench trial in which defendant was tried separately he was found guilty of armed robbery but not guilty of rape and sentenced to the penitentiary for a term of 7 to 21 years. On appeal defendant questions whether the circumstantial evidence was sufficient to sustain the conviction.

At trial Donna Grill testified as follows: On August 24, 1974, she had been sleeping with her husband in their apartment at 6124 North

Winthrop in Chicago. At approximately 6:45 a.m. she was awakened by a noise and saw three black men burst into the bedroom. An umbrella was quickly opened in the Grills' faces, obstructing their vision, and one of the men put a knife to Mr. Grill's throat. Complying with the intruders' instructions, the Grills got out of bed and faced the closet. Mrs. Grill was blindfolded, and Mr. Grill was covered with blankets. A search of the apartment produced about $10. Having found the Grills' bankbook, the men decided that Mrs. Grill was to go to the bank and would withdraw $1300. Mrs. Grill's blindfold was removed while she dressed and then was immediately replaced.

Mrs. Grill was taken to her car in the parking area underneath the building, and her blindfold was again removed. She noticed that a bowling ball and several other items were missing from the car. One of the men drove her to the bank where she withdrew 13 $100 bills. She came back to the car and waited for the driver to return. After the driver returned and was given the money, he put seven of the $100 bills in his sock. He told Mrs. Grill not to say anything to his friends because he wanted to keep the money. Mrs. Grill was again blindfolded for the drive back. The driver stopped the car at a service station during the trip, explaining that if he didn't keep calling the apartment, his friends would believe something was wrong and would kill her husband.

Still blindfolded, Mrs. Grill was taken back to the apartment where two men took off her clothes and had intercourse with her. She was then taken into the bedroom and tied up with her husband.

Various household items were taken from the apartment, including jewelry, linen and clothing. The Grills waited a few minutes after they believed that the men had gone, then attempted to untie themselves. One of the men had remained behind, however, and he tightened their bonds and left. The Grills again struggled to untie themselves. Approximately 10 minutes passed from the time the last man left the apartment until the Grills freed themselves and the police were called.

Mrs. Grill was subsequently taken to the police station where she identified most of the items taken from the apartment. Only $800 was recovered and returned. At trial Mrs. Grill identified her husband's wedding ring stating that their rings were not part of a matched set but were similar in design.

Stewart Grill corroborated his wife's testimony. In addition he testified that while he was blindfolded, one of the men removed his gold wedding ring, stated that it fit him, and that he wanted it and no one else was going to get the ring. Mr. Grill identified his ring at trial and placed it on his finger. When Mr. Grill telephoned the police after untying himself, he informed them of what had occurred and stated that his car had been taken and gave the license plate number.

Officer Marvin Shear of the Chicago Police Department testified that on the morning of August 24, 1974, he observed three black men in a vehicle which had been the subject of a radio bulletin about 10 minutes before. The car was proceeding southbound on Sheridan Road. After curbing the car at 5730 North Sheridan, Officer Shear arrested the driver, Jerry Smith, and the passengers, Waverly Williams and defendant. The vehicle contained the Grills' personal property. At the police station defendant was found to be wearing Mr. Grill's gold wedding ring. A search of Smith disclosed six $100 bills, four of which were discovered in his sock. Williams was searched and two $100 bills and $34 in smaller denominations was recovered.

Waverly Williams, who had previously entered pleas of guilty to the armed robbery and rape charges, testified for defendant. He stated that he entered the Grill apartment with Jerry Smith and Alvin Blake, and that it was not until Williams and Smith had left the apartment after the robbery that they saw defendant and allowed him into the car. Once inside the car Smith offered to sell defendant a ring for $20. After defendant replied that he had only $10, Williams, who had earlier taken the ring from Smith, took the money from defendant and handed him the ring. Williams stated that he gave the police the same account.

On cross-examination Williams testified that he lived at 6131 North Winthrop but that he had spent the night prior to the breakin at a friend's apartment located at 6145 North Winthrop. He did not know where Blake lived. Williams denied knowing anything about a rape or whether a knife was used during the robbery. He stated that after dividing the money, the Grills' property was put into boxes. All but two of the boxes were then taken downstairs and put into the Grills' car. He and Williams then drove away, leaving Blake with the remaining two boxes. They had driven south one block when they saw defendant and stopped briefly to talk to him. This was the only stop that was made. Defendant asked to be driven to his mother's house but when he was turned down accepted a ride to Bryn Mawr and Sheridan Road. En route the car was stopped and the occupants arrested. Williams admitted that he lied when he made a statement after his arrest that he and Smith were standing in front of 6145 North Winthrop when two Puerto Ricans drove up, told them that they were moving and offered them $50 to drive the car to their new address. Williams also admitted that he did not tell anyone that he had given the ring to defendant until the day of trial.

Defendant testified that on the day of his arrest he had left his home and walked to his friend's apartment at 6054 North Winthrop to ask for a ride to his mother's house. Although he had known this friend for 6 months, he did not know his last name. Since his friend was not at home, he left the building, soon met Williams and Smith and was given a ride. Defendant

stated that he purchased the ring and had just put it on his finger when they were stopped by the police. He acknowledged that the ring fit him. Defendant denied making a statement after his arrest that the ring had been given to him.

In rebuttal assistant State's attorney Stephen Broadhay testified that he interviewed defendant after his arrest, and that defendant told him that he had been given the ring after commenting that he liked it.

The trial judge stated that he did not believe the testimony given by Williams or defendant and found defendant guilty of armed robbery and not guilty of rape. He concluded by stating:

> "One of the problems that I find with respect to the two charges is the fact that the act of the rape is not in furtherance of a conspiracy of the armed robbery; that there is only testimony of the participants by two people in the actual rape after the armed robbery has in fact been committed. And when perhaps someone could have been even outside the apartment at the time."

OPINION

At the outset we note that although the evidence against defendant was entirely circumstantial, this alone does not warrant a reversal of the conviction. Circumstantial evidence is legal evidence, and a conviction based upon circumstantial evidence may be sustained just as if the conviction were based upon direct evidence. (*People v. Bernette*, 30 Ill. 2d 359, 197 N.E.2d 436.) It is sufficient if all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the accused's guilt. *People v. Holt*, 7 Ill. App. 3d 646, 288 N.E.2d 245.

■■ The evidence presented established that defendant was arrested in the Grills' car only a few blocks from the victims' apartment, wearing Mr. Grill's gold wedding ring. Proceeds of the armed robbery were found in the car, and currency which was also taken was found after a search of defendant's two companions. Furthermore, Mr. Grill testified that the one who had taken his wedding ring, after seeing that it fit, stated that no one else could have it. In fact, the ring fit defendant. These are strong circumstances linking defendant to the armed robbery. The recent, exclusive and unexplained possession of stolen property by a defendant jointly with others in itself gives rise to an inference of guilt which may be sufficient to sustain a conviction for armed robbery in the absence of facts and circumstances which leave in the mind of the trier of fact a reasonable doubt of guilt. *Holt; People v. Curtis*, 7 Ill. App. 3d 520, 288 N.E.2d 35.

Defendant does not question the general validity of this presumption and concedes that he was in exclusive possession of recently stolen property. However, defendant contends that a reasonable doubt of guilt

was created by the unrebutted testimony of defendant and Williams explaining how defendant came to be in the car and how he obtained the ring, the fact that a search of defendant produced none of the $100 bills, and that he did not attempt to dispose of the ring after his arrest.

We must reject defendant's claim that the unrebutted explanation of his presence in the car requires a reversal. In *People v. Hanson*, 97 Ill. App. 2d 338, 342-43, 240 N.E.2d 226, 228, the court directed its attention to the weight to be given an explanation offered by a defendant:

> "When the courts speak of an explanation they do not mean that any explanation overcomes the inference of guilt. It must be a satisfactory explanation—one that the trier of fact finds reasonable and acceptable. This does not mean that a defendant must assume the burden of giving a satisfactory explanation for the possession of stolen property or be found guilty if he does not, for the burden is always upon the State to prove him guilty beyond a reasonable doubt. It does mean, however, that the inference arising from the recent and exclusive possession of stolen property casts the burden of going forward with the evidence upon the defendant. If no explanation is made the inference maintains and the weight to be given it is for the trier of fact to decide. If an explanation is made, the acceptance or rejection of the explanation is also for the trier of fact. The defendant's explanations were not accepted by the trial judge and it cannot be said that they should have been. The defendant is mistaken when he states that his explanations were not denied. They were denied by the total and contrary evidence of the State; no specific contradiction had to be made in rebuttal to everything he asserted by way of explanation."

■■ In the instant case there were sufficient contradictions and inconsistencies to warrant rejection of defendant's explanation. Waverly Williams testified that no stops were made prior to their arrest except briefly to pick up the defendant. However, the evidence indicated that the police stopped the stolen car within a mile of the victims' apartment at least 20 minutes after the robbery. This unexplained period of time afforded ample opportunity to dispose of some of the proceeds of the robbery. Williams' credibility was further impeached by his admittedly false story given to police about being offered $50 to drive the Grills' car. The evidence also disclosed that the person who took the ring from Mr. Grill stated that it fit him, and that no one else could have it. The ring was discovered on defendant's finger, and he acknowledged that it fit him. When initially questioned about the ring, defendant stated that it had been given to him, and only later did he claim that he had purchased it.

It is well established that a reviewing court will not substitute its judgment as to the credibility of witnesses for that of the trier of fact who

observed the witnesses and heard the evidence presented. The reviewing court will not disturb the judgment of the trial judge unless the evidence is so unsatisfactory as to leave a reasonable doubt of guilt. (*People v. Hampton*, 44 Ill. 2d 41, 253 N.E.2d 385.) When a defendant offers an explanation, he must tell a plausible story or be judged by its improbability. The trial judge, as the trier of fact, was entitled to disbelieve the explanation offered by defendant. *People v. Kaprelian*, 6 Ill. App. 3d 1066, 286 N.E.2d 613.

■■ Defendant further contends that the inconsistent verdicts of guilty of armed robbery and not guilty of rape add support to his assertion that a reasonable doubt exists as to whether defendant was present at the Grills' apartment. However, the trial judge's comments clearly indicate the bases for the different judgments. Reviewing the evidence, the trial court properly concluded that there was a doubt that defendant was proven guilty of rape. This determination cannot affect the conviction for armed robbery. While the evidence may not have been sufficient to prove defendant guilty of rape due to the fact that only two men actually participated in that offense, there was no doubt that three men participated in the armed robbery.

In view of the fact that the evidence of the State was sufficient to sustain the armed robbery conviction, we will not disturb the judgment.

Affirmed.

LORENZ, P. J., and SULLIVAN, J., concur.