THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHESTER BOYCE, Defendant-Appellant.

First District (4th Division) No. 61576

Opinion filed July 28, 1976.

James R. Streicker and Lynn Sara Frackman, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Renee G. Goldfarb, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, Chester Boyce, and his co-defendants, Walter Melvin and John Gary, were indicted for aggravated kidnapping and armed robbery of Morris Franklin and aggravated kidnapping and attempt armed robbery of Joan Bellaire. The cause proceeded to be tried before a jury on January 29, 1974, with John Gary being tried in absentia. Chester Boyce and John Gary were found guilty as charged except that the aggravated kidnapping charge of Morris Franklin was reduced to simple kidnapping. Walter Melvin was acquitted on all charges. Boyce was sentenced to serve 15 to 30 years on the aggravated kidnapping and armed robbery charges and 3 to 10 years on the kidnapping charge, all sentences to run concurrently.

Defendant, Chester Boyce, pursues this appeal separately and contends as follows: (1) he was denied effective assistance of counsel; (2) the trial court erred in failing to *sua sponte* sever his cause when his co-defendant did not appear for trial; (3) improper comment by the prosecutor during closing argument deprived him of a fair trial; (4) he was not proved guilty

beyond a reasonable doubt; (5) judgment should be vacated on the attempt armed robbery charge as an included offense of the aggravated kidnapping conviction, and the remaining offenses should merge into a single conviction since they arise out of a single course of conduct; and (6) his concurrent sentence of 15 to 30 years is excessive.

We summarize the evidence. Joan Bellaire and Morris Franklin, the two complaining witnesses, testified that on August 9, 1973, they were playing cards at the home of Joan Bellaire's mother. They left the residence at about 11:30 that evening and drove off in Franklin's car. After they had proceeded about five doors down the street, the car stopped. Franklin got out of the car, made the necessary repairs, and returned to the driver's seat. As they were about to drive on, the three defendants approached the car. Defendant Boyce put a gun to Franklin's head and ordered him out of the car. Boyce handed the gun to defendant Gary and instructed him, "If anybody makes a funny move, you shoot." He then proceeded to search Franklin and took a five dollar bill, a money order receipt and a check stub. At the preliminary hearing Franklin testified that it was Gary who searched him. While Franklin was being searched, Gary asked Bellaire if she had any money. She replied that she did not.

After Boyce had searched Franklin, the three defendants argued. Boyce then pushed Franklin into the front seat of the car, and he got in the driver's seat. The other two defendants sat in the back seat with Bellaire between them. Bellaire testified that they both proceeded to search her, but recovered nothing since her change purse was empty. At the preliminary hearing she testified that she left her purse at home. Boyce drove the car via Roosevelt Road to Douglas Park. Bellaire cried during this time and Boyce threatened to blow her head off if she did not stop. While they were in Douglas Park, Gary suggested raping Bellaire. Melvin rejected the idea and told her that if she stopped crying, he would not let them do anything to her.

From Douglas Park they proceeded to the Chicago Loop. When they stopped at a red light on Monroe Street, a blue Chevy pulled up next to their car. Jim DeLeo, an off-duty deputy sheriff, was riding in the front passenger seat of that car. He testified that through his window he observed what appeared to be a gun in Gary's hand pointed at Bellaire. DeLeo then flashed his badge at Boyce and motioned him to pull over. Boyce went through the red light and pulled over to the side. He ordered his victims not to make a move and further instructed Bellaire not to cry and to act naturally. As DeLeo approached to car, Franklin jumped out and told him that the man in the back seat had a gun. DeLeo, with his gun in hand, ordered Gary to drop his gun on the floor. When he didn't, the sheriff fired a warning shot in the air. Gary then dropped his gun, and

DeLeo recovered it. He also recovered a five dollar bill, a check stub, and a money order receipt from Gary.

At trial, Boyce testified in his own behalf. He testified that he and his co-defendants were not the perpetrators of the crime, but rather the victims of it. Boyce related that on the day in question he was walking with Melvin and Gary. Joan Bellaire was standing at the corner of Washtenaw and Polk. As they approached her, she told Boyce that if he had the money, she had the time. He responded that he would slap her. Morris Franklin then appeared. After a brief exchange of words, Franklin pulled out a gun and ordered the three defendants to get in his car. As directed, Melvin and Gary got in the back seat, and Boyce sat behind the wheel. Franklin, who sat next to Boyce, then instructed him to drive to Douglas Park and later to downtown Chicago. Franklin had his gun out at all times.

On cross-examination Boyce stated that at the time DeLeo pulled up next to them, Franklin had the gun pointed at his side below the window level. He had not violated any traffic law. Boyce further testified that the first time he noticed a gun in DeLeo's hand was when he fired the shot. He also said that DeLeo conducted a search of everyone, and that as far as he could tell, the search produced nothing.

Defendant first contends that he was inadequately represented by his trial counsel. Much is made of the fact that when defendant appeared for trial, he requested the appointment of new counsel. Pursuant to his request, defendant's private counsel, Jack Rodgon, motioned the court for leave to withdraw as counsel. The court initially denied the motion since it was made on the day of trial; however, later that day the court reversed its ruling and appointed Charles Schwartz to represent defendant. On appeal it is argued that defendant never was apprised of the fact that Schwartz was Rodgon's law partner, and that his dissatisfaction with Rodgon logically would apply as well to his partner.

■■ We have reviewed the record carefully and find it shows the contrary. On December 17, 1973, Boyce was present in court when Schwartz stated to the court:

> "For the record my name is Charles Schwartz. I represent Mr. Melvin and Mr. Boyce, and this is Mr. Rodgon's case."

Thus, prior to trial defendant did in fact know that Schwartz was associated with Rodgon. Moreover, the record further establishes that Boyce not only failed to object to the appointment of Schwartz, but affirmatively expressed his satisfaction with the appointment. Accordingly, we find this argument to be without merit. See *People v. Johnson*, 45 Ill. 2d 38, 257 N.E.2d 3.

Defendant further argues that his defense counsel was incompetent in that he failed to secure the presence of a material witness either at the hearing on defendant's motion to quash the arrest or at trial. The alleged material witness is Bruce Schumacher, who according to the testimony of Sheriff DeLeo was driving the automobile in which he was a passenger on the evening in question. Defense urges that Schumacher's testimony as an eyewitness to the arrest was crucial both on the question of DeLeo's probable cause for stopping the automobile driven by Boyce and on the credibility of the complainants' testimony at trial. We are not in accord.

At the conclusion of the hearing on defendant's motion to suppress and quash the arrest, Schwartz commented that he "did not know about a second person being in [DeLeo's] car until just a few minutes ago." He explained that it was not noted on the police report, and expressed his desire to call Schumacher as a witness. The court denied the motion to suppress, but granted Schwartz the opportunity to reopen the hearing if Schumacher were produced. Schwartz asked for Schumacher's address, and Officer DeLeo gave it to him. The court then inquired whether Schumacher could be brought in on Thursday, the following day. DeLeo responded that he was out of town and would be back on Friday. The court told him to bring Schumacher in on Friday.

The law is well settled that the failure to call a witness cannot be the basis of a claim of incompetency of counsel where such failure appears to be a matter of trial strategy. (*People v. Hines*, 34 Ill. App. 3d 97, 339 N.E.2d 489.) Moreover, the fact that defense counsel did not take action which he could have does not establish incompetency of counsel in the absence of any showing that such action would have produced evidence affecting the guilt or innocence of the defendant. (*People v. Goines*, 20 Ill. App. 3d 1055, 314 N.E.2d 193.) Such a claim of prejudice cannot be based on mere conjecture. *People v. Thomas*, 51 Ill. 2d 39, 280 N.E.2d 433.

■■ The record establishes that although defense counsel was aware of Schumacher's presence and was given his address at trial, he made no attempt to subpoena him as a witness. Whether in fact Schumacher was interviewed by defense counsel is not known. Furthermore, in neither the appellant's brief nor oral argument was an assertion made or an affidavit presented claiming that Schumacher would contradict the testimony of Officer DeLeo and corroborate defendant's story. It is clear to us that the value of Schumacher's testimony is purely speculative. Moreover, the failure of defense counsel to call him to the stand appears to be a matter of trial strategy. Under these circumstances, the instant attack on the competency of defense counsel seems most unwarranted.

Defendant asserts one final instance of alleged incompetence. He argues that he was denied effective assistance of counsel when his

attorney failed to move for a mistrial and secure severance after one of his co-defendants failed to appear for trial and was tried in absentia. The record indicates that the trial was commenced on January 23, 1974. The jury was selected on that day. On the following day neither John Gary nor Walter Melvin appeared. The court informed the jury that an "administrative problem" had arisen and that the cause would be continued to January 29th. On January 29th Melvin appeared, however, Gary remained at large. Nevertheless, the court commenced the hearing. No objection was raised by any of the three defense counsels to proceeding without Gary. Defendant argues that in the jury's eyes, Gary's failure to appear was tantamount to an admission of guilt, and that it would follow, therefore, that the jury would believe that the remaining two defendants were guilty.

■■ Clearly, this claim of prejudice amounts to pure speculation; but more importantly, it is negated by the record itself. The fact remains that in the absence of Gary, the jury nevertheless acquitted Melvin. We must conclude, therefore, that the jury carefully and independently considered the evidence against each defendant, and that defendant Boyce was not prejudiced by the failure of his counsel to secure a severance. The cases cited by the defense on this issue are inapplicable on the facts.

■■ Defendant next raises the related contention that the trial court erred in failing to order *sua sponte* a severance of his cause when his co-defendant did not appear after the first day of trial. The general rule in Illinois is that persons jointly indicted should be tried together, and whether a separate trial should be granted under the circumstances is a matter largely within the sound discretion of the trial judge. (*People v. Wilson*, 29 Ill. 2d 82, 193 N.E.2d 449, *cert. denied*, 377 U.S. 955, 12 L. Ed. 2d 499, 84 S. Ct. 1634.) As we explained above, defendant was not prejudiced merely because he was tried jointly with co-defendant Gary in absentia. Accordingly, we reject the argument that the trial court should have granted a severance *sua sponte. People v. Wheeler*, 121 Ill. App. 2d 337, 257 N.E.2d 587 is relied upon by defendant. There the co-defendant made a statement incriminating the defendant, and it was held that the trial court erroneously failed to *sua sponte* sever the cause. In the case at bar no testimony was presented of any statement made by Gary which implicated defendant in the crimes, and accordingly, *Wheeler* is inapposite.

■■ Defendant next contends that because the complainants' testimony was self-impeached and inherently incredible, and because Melvin, his co-defendant was acquitted on the same charges, his conviction cannot stand. We have reviewed the record thoroughly and find this contention to be without merit. The testimony of Joan Bellaire and Morris Franklin was corroborated in material part by Officer DeLeo.

Admittedly, there were minor inconsistencies in their testimony, but nevertheless we are satisfied that the evidence established defendant's guilt beyond a reasonable doubt. As to the acquittal of Melvin, the law is settled that the acquittal of one of two jointly indicted defendants is not grounds to relieve the other unless the verdicts were based upon precisely the same evidence, identical in all respects as to both defendants. (*People v. Jones*, 132 Ill. App. 2d 623, 270 N.E.2d 288.) Defendant argues that such is the case here. We read the record differently. According to the complainants' testimony, it was defendant who put a gun to Franklin's head. It was defendant alone who ordered Franklin to get in the car and drive. Moreover, it was defendant who searched them, gave the gun to Gary, and ordered him to shoot if necessary. We also note that when Gary suggested raping Bellaire, Melvin objected. He also told her that if she stopped crying he would not let the others do anything to her. Whether this evidence led to Melvin's acquittal, of course, is unknown. But the fact remains that the evidence against Melvin differed substantially from that against defendant. Accordingly, his acquittal is not a ground upon which to reverse defendant's conviction.

■■ Defendant also contends that improper comment by the prosecutor during closing argument deprived him of a fair trial. More specifically, he objects to the following remarks:

"There should be disgust that crime is committed on the streets, a crime where an off-duty Deputy Sheriff does what we hope in our hearts someone would do if we were in that position—are maligned—are attacked. Do you honestly believe that [if] the victims in this case were white people from Highland Park, or the North Shore, that you would have heard this conclusion? Well, you wouldn't have. It's because they are black and it's because it happened on the West Side of Chicago that you heard this defense."

While we agree with defendant that the use of racially charged language is not to be encouraged, we do not believe that the instant remarks warrant a reversal of his conviction. We cannot say that the questionable language, considered in light of all the evidence, was a material factor in his conviction and that the verdict would have been different had the language not been used. *People v. Nicholls*, 42 Ill. 2d 91, 245 N.E.2d 771, *cert. denied*, 396 U.S. 1016, 24 L. Ed. 2d 507, 90 S. Ct. 578.

■■ Defendant further contends that his conviction of attempt armed robbery should be vacated as an included offense of his aggravated kidnapping conviction, despite the fact that no sentence was imposed on the attempt armed robbery, and that the remaining offenses should merge into a single conviction of armed robbery. In *People v. Canale*, 52 Ill. 2d 107, 285 N.E.2d 133, our supreme court held that a defendant can be

convicted and sentenced for both rape and aggravated kidnapping even though the two offenses arose from a series of closely related acts committed against the same victim. The court held in substance that aggravated kidnapping and rape were two separate and distinct offenses, even though the kidnapping became aggravated because of the felony of rape. What was said in *Canale* is equally applicable here, and accordingly, we hold that defendant's conviction for attempt armed robbery need not be vacated.

■■ We likewise reject defendant's contention that the offenses of armed robbery, kidnapping and aggravated kidnapping should merge into a single conviction of armed robbery since they all arose out of the same conduct. Where more than one offense arises from a series of closely related acts and the crimes are clearly distinct and require different elements of proof, the conviction and sentence for each offense must stand. (*People v. Johnson*, 44 Ill. 2d 463, 256 N.E.2d 343, *cert. denied*, 400 U.S. 958, 27 L. Ed. 2d 266, 91 S. Ct. 356.) This is particularly true where, as in the case at bar, the offenses involve more than one victim. The aggravated kidnapping and attempt armed robbery of Joan Bellaire were entirely different and distinct crimes from the armed robbery and kidnapping of Morris Franklin.

Lastly, defendant contends that his concurrent sentence of 15 to 30 years is excessive. It is argued that the apparent seriousness of the offenses is betrayed by the reality of what in fact occurred. Defendant characterizes the incident as an unconsented car ride for less than an hour by two persons who suffered no serious or lasting injury and from whom five dollars and some worthless paper were taken. In view of this we are urged to utilize our power under Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4)) and to reduce defendant's sentence to a term of four years, the minimum for armed robbery.

■■ We cannot share this position. The record reveals testimony by the victims of being kidnapped, a threat to shoot and kill them and to rape Joan Bellaire. Except for the fortuitous appearance of Officer DeLeo and his successful efforts to free the victims, we may never know what the defendants would have done to their victims. Similarly, the mere fact that the victims possessed only five dollars is of no consequence. The trial judge who saw and heard the witnesses believed the offenses were sufficiently serious to warrant a severe sentence, and we are fully in accord.

We have carefully reviewed the entire record and considered all of the assignments of error and find no reversible error.

Judgment affirmed.

JOHNSON, P. J., and DIERINGER, J., concur.