THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES JOHNSON, Defendant-Appellant.

First District (4th Division)    No. 77-1827

Opinion filed July 19, 1979.

Ralph Ruebner and Rosetta Hillary, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Iris E. Sholder, and Ira H. Raphaelson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Defendant, James Johnson, and his co-defendant, Frank Lee, who is not a party to this appeal, were indicted for armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—2) and tried before a jury in the circuit court of Cook County. After jury selection, and in the course of hearings on pretrial motions, Lee failed to reappear in court. The trial court denied defendant's motion for a mistrial and the trial continued in Lee's absence. Defendant was found guilty and sentenced to a term of 4 to 8 years of imprisonment. Lee was also found guilty and sentenced to a 7- to 18-year term.

Defendant appeals, contending: (1) the trial court's failure to grant a mistrial denied defendant a fair trial; (2) the trial court erred in denying defendant's motion to quash his arrest and suppress identification testimony; (3) improper cross-examination and closing argument by the prosecutor denied defendant a fair trial; (4) the State failed to prove defendant guilty of armed robbery beyond a reasonable doubt; (5) the trial court erred in giving an instruction on the recent possession of stolen property; and (6) the sentence was excessive.

We affirm defendant's conviction and sentence for armed robbery.

Prior to trial, the court heard defendant's motions to quash his arrest and suppress identification testimony. On November 10, 1976, the second day of the pretrial hearings, co-defendant Lee failed to appear in court. In accordance with the procedure for absent defendants, the court continued the proceedings for the statutory two-day period. (Ill. Rev. Stat. 1975, ch. 38, par. 115—4.1.) When the court reconvened on November 12, 1976, Lee again was not present, and the court proceeded to hear testimony and deny defendant's pretrial motions. Defendant then moved for a mistrial based on Lee's absence. The trial court denied the mistrial but later admonished the jury not to consider Lee's absence as evidence against defendant.

The testimony adduced at the hearing on the pretrial motions was substantially the same as that given at trial. Steven Bradshaw, the complaining witness, testified that on August 1, 1975, at about 9:15 p.m., he parked his blue 1974 Buick Electra 225 in Ogden Park and got out to take a drink at a public fountain. Two men wearing straw hats approached Bradshaw at the fountain. One of the men, who Bradshaw identified before and during trial as defendant, said "hey man, put your keys over here." Bradshaw laughed until he looked up and saw that defendant held a .22-caliber revolver. Bradshaw turned over his keys. Defendant then demanded money but as Bradshaw reached into his pocket to oblige, defendant cocked the gun. The second man, identified by Bradshaw as co-defendant Frank Lee, reached into Bradshaw's pocket and removed about $10. Then Lee entered on the passenger side of the Buick, defendant took the wheel, and the two drove off. Bradshaw walked to the park field house where he told a policeman that two men had robbed him and taken his car. Bradshaw testified that his car had a reapplied-for city sticker slip on the front windshield.

Bradshaw next saw his car three or four hours later at the police station after being notified that it had been located. At that time he noticed some damage to the right front fender and rear of the car. The interior of the car was in disarray and two straw hats had been left inside. Bradshaw threw the hats away after recovering his car.

At the police station that night, Bradshaw viewed a six-man lineup from which he identified defendant and Lee. At trial he identified defendant and Lee from a photograph of that lineup. Bradshaw described defendant as dark skinned, 5′ to 5′6″ tall and 130 to 140 pounds. Lee was tall and light skinned. He stated that he identified the men by their physical appearances rather than their clothing. On cross-examination, Bradshaw indicated that at the preliminary hearing he had confused the names, but not the identities, of the co-defendants.

Robert Bokowski, a Chicago policeman, testified that on the evening of August 1, 1975, he and two other plain clothes policemen, Carl Reid

and Dennis Malloy, were patrolling in an unmarked police car. At about 11:45 p.m. they pulled along side a blue Buick at a red light. Reid noticed that the car had no Chicago city vehicle sticker and the officers made an attempt to stop the car. Reid honked the horn and Malloy held up his badge and motioned the car to pull over.

When the light turned green, the Buick pulled away from the light at a high rate of speed, 50 to 60 m.p.h., and the police officers followed. While in pursuit, the officers ran a check of the license plates on the Buick and obtained the name and address of the owner. Bokowski testified that Lee was on the passenger side of the front seat and that defendant was driving. Another individual, identified as Johnny Tarvin, was in the back seat. While attempting to make a left hand turn, the Buick went out of control and hit a post. The police stopped behind the vehicle. The Buick backed up and hit the police car and then angled across the street. Defendant left the car and ran about 30 feet before being apprehended by Officer Reid. Bokowski chased and apprehended Tarvin. Lee, who remained in the car, was apprehended by Officer Malloy. Traffic citations were issued for the stop and chase, and the occupants of the car were taken to the police station.

Officer Malloy, who testified at the hearing and at trial, added that when the police first pulled next to the car, he noticed that the Buick had no city sticker, but did have a piece of paper where the sticker should have been. Additionally, Malloy stated that Lee moved from the passenger side to the driver's seat of the Buick and attempted to pull the car away from the curb but hit a parked car before he was arrested.

Officer Reid described Lee as thin and taller than his companions, approximately 5'10", and 145 to 150 pounds with a light complexion. Reid testified that he saw straw hats in the back of the car during his preliminary search of the vehicle, but did not retain the hats.

Officer Raymond Komara testified that he conducted a lineup on August 2, 1975, at approximately 4:30 a.m. Prior to viewing the lineup, Bradshaw had related the details of the robbery to Komara and his partner. Bradshaw was then taken into the lineup room where he viewed six males of approximately the same height and weight, including defendant, Lee and Tarvin. Bradshaw pointed out defendant and Lee as the men who had robbed him. Bradshaw was not shown photographs before viewing the lineup.

Defendant testified on his own behalf that on the evening of the robbery he was at home watching television. His parents were also there. At 10 p.m., Frank Lee, a neighbor with whom defendant had been acquainted for five or six months, arrived and invited defendant to a party. Lee said that it would not be necessary to take a bus to the lounge

where the party was being held because his friend Johnny Tarvin was waiting outside with a car. They left defendant's house and went out to the car at about 10:15 p.m. After being introduced to Johnny Tarvin, defendant got into the back seat of the blue Buick and Tarvin drove off.

As they drove to the lounge, three men in a car pulled up beside the Buick at a red light and sounded their car horn. One of the men pulled out a pistol and waived the Buick over. Defendant did not see anyone flash a badge. When the light changed, Tarvin sped away, driving 50 to 55 m.p.h. The other car pursued them, sounding a police siren.

Defendant testified that he told Tarvin to stop the car but Tarvin ignored him. Five or six blocks later, while attempting to turn down a side street, Tarvin hit a parked car. Immediately, Tarvin got out of the car on the left side; defendant got out of the back seat and exited through the left door. He raised his hands up in the air to prevent the police from firing at him. Defendant was arrested approximately five or 10 feet from the car. He stated that neither Lee nor he tried to run away. Defendant was transported to the police station with Lee. Tarvin was brought to the station 15 to 20 minutes later. It was only after he arrived at the police station that defendant learned about the robbery.

Defendant testified that when Bradshaw viewed the lineup, a police officer stood beside Bradshaw talking and pointing. Defendant denied that he robbed Bradshaw, that he ever owned a pistol or that he was wearing a straw hat on the night of August 1, 1975. Defendant never saw any hats in the back seat of the car or being worn by Lee or Tarvin. Defendant testified that he was approximately the same size and complexion as Johnny Tarvin and that the policemen confused him with Tarvin at the police station.

In closing argument to the jury, the prosecutor remarked about defendant's failure to call his parents to corroborate his alibi testimony. Lee's attorney argued that his client's absence did not give rise to an inference of guilt. In rebuttal, the prosecutor commented that it was reasonable for the jury to believe that Lee's absence was motivated by guilt.

Over defense objection, the court instructed the jury that if it found that defendant had exclusive, unexplained possession of recently stolen property, it could infer that he obtained the property through armed robbery. Illinois Pattern Jury Instructions, Criminal, No. 13.21 (1968) (hereinafter cited as IPI Criminal).

The jury found both defendant and Lee guilty of armed robbery. During the sentencing hearing the trial judge stated that he imposed a sentence of 4 to 8 years imprisonment on defendant because he believed defendant lied at trial.

Opinion

## I

■■ Defendant first contends that the trial court erred in failing to grant a mistrial when his co-defendant did not appear after the first day of trial. The general rule is that persons jointly indicted for the commission of a crime should be tried together unless the defenses of the various defendants are so antagonistic that a fair trial cannot be assured. (*People v. Daniels* (1976), 35 Ill. App. 3d 791, 342 N.E.2d 809.) Whether a separate trial should be granted is largely a matter within the sound discretion of the trial court. (*People v. Boyce* (1976), 41 Ill. App. 3d 53, 353 N.E.2d 287.) By statute, the absence of a defendant does not bar the trial court from concluding the trial, Ill. Rev. Stat. 1975, ch. 38, par. 115—4.1.

Here, co-defendant Lee absented himself from trial after the first day of hearings on pretrial motions. When the court reconvened two days later, hearings on defendant's pretrial motions resumed in Lee's absence. After the court denied his pretrial motions, defendant moved for a mistrial, arguing that Lee's flight would implicate defendant and deny him a fair trial.

■■ We must reject defendant's contention that the prosecutor's reference to Lee's absence during trial and the giving of an instruction on accountability unfairly placed the burden on defendant to explain Lee's conduct. Where there is no indication of antagonistic defenses and the jury is cautioned to regard each defendant separately, the mere absence of a co-defendant does not necessarily result in prejudice to the remaining defendant. The alleged prejudice must be more than speculative. Here the State's case against defendant was based on the identification of defendant as the robber and driver of the stolen vehicle. Any negative inference raised by co-defendant's absence reflected on Lee rather than the defendant. Therefore, we hold that the trial court properly denied defendant's motion for mistrial.

## II

Defendant next challenges the denial of his motion to quash arrest and suppress identification testimony. Defendant argues that his arrest was without probable cause and that the subsequent identification of defendant by Bradshaw was the direct result of an improper arrest.

■■ ■ It is contended that there was no probable cause to arrest defendant at the time the police motioned the Buick over at the red light. This contention is misplaced. Although probable cause must exist to sustain an arrest, a police "stop" may be based on something less than probable cause. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; Ill. Rev. Stat. 1977, ch. 38, par. 107—14.) Moreover, a police request made without force or threatened force does not constitute a

"stop" provided the police do not confine or restrain an individual without his consent. (*People v. Tilden* (1979), 70 Ill. App. 3d 859, 388 N.E.2d 1046.) In this case, if honking their car horn, identifying their office and motioning the car to pull over to the curb can be considered sufficient police conduct to constitute a "stop," it was permissible for the purpose of investigating a possible violation of the city sticker ordinance. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Holdman* (1978), 73 Ill. 2d 213, 383 N.E.2d 155.) Under the facts and circumstances of the moment, the police officers had a reasonable belief that the failure of the vehicle to display a proper Chicago city sticker was a possible violation of the city sticker ordinance.

■■ Probable cause to arrest defendant was provided by the subsequent flight and high speed chase which followed the police officers' attempt to stop the vehicle. This conclusion is supported by *People v. Holdman* (1978), 73 Ill. 2d 213, 383 N.E.2d 155, in which the supreme court recently considered a factual situation nearly identical to the one in this case. There, police officers suspected that the car in which the defendants were riding was associated with an individual wanted for armed robbery. When the police shined a spotlight into the car, the driver immediately accelerated. The ensuing chase ended when the vehicle crashed into a viaduct. Although the suspects fled on foot, they were later apprehended by the police and taken back to the crash site. There, defendants were identified by the victim of an unrelated robbery who happened upon the scene when the police officers to whom he was reporting the robbery were called to assist in the apprehension of the defendants.

When presented with the question of whether the arrest and subsequent identification were valid, the court in *Holdman* concluded that the initial spotlight check was not a "stop" because there was no coercion by the officers and, even if a "stop" had taken place, it was permissible under *Terry*. Further, the high speed chase "required pursuit" and the subsequent return of the defendants to the crash site and identification by the robbery victim were permissible both under *Terry* and for violation of the Illinois resistance statute (Ill. Rev. Stat. 1977, ch. 38, par. 31—1). Thus, the court concluded that there was probable cause to make a warrantless arrest and the subsequent identification of the defendants was admissible.

■■ The decision in *Holdman* is controlling on the question of probable cause in this case. After the high speed chase and crash, defendant, who was identified as the driver of the vehicle, was issued traffic citations for failing to display a city sticker, speeding, backing without due caution, leaving an unattended vehicle, damage to city property and eluding the police. Since the police had learned the identity of the owner of the vehicle during the chase, it was clear that the car did not belong to any of

the persons apprehended. Although the arresting officers were not aware that the car had been reported stolen, they learned of the robbery shortly after transporting defendant to the police station. The subsequent identification of defendant at the police station was thus not improperly obtained, and the trial court properly denied defendant's pretrial motions to quash arrest and suppress identification testimony.

## III

■■ Defendant complains of certain cross-examination questions and closing argument made by the prosecutor. The first area of objection concerns the prosecutor's inquiry on cross-examination as to whether defendant's parents were present in court and his comment during closing argument regarding defendant's failure to call his parents to testify in his behalf. Defendant's alibi was that at the time of the robbery he was at home watching television. Although he testified that his parents were also at home at that time, he did not call them to testify at trial. A recognized exception to the general rule barring prosecutorial comment on defendant's failure to produce certain witnesses is where defendant has interjected his activities with potential alibi witnesses and then does not produce them at trial. (*People v. Blakes* (1976), 63 Ill. 2d 354, 348 N.E.2d 170; *People v. Jones* (1977), 55 Ill. App. 3d 446, 370 N.E.2d 1142.) The challenged comments fall within this exception and were therefore proper.

■■ Defendant objects to two questions asked him on cross-examination regarding the whereabouts of co-defendant Lee and comment during closing argument on Lee's absence. Defendant contends that in this manner the State attempted to hold him accountable for Lee's absence. Considering that the trial court did not allow this subject to be pursued on cross-examination; that the trial court gave proper cautionary instructions to the jury to consider each defendant separately; and that defendant's guilt was based on ample evidence that he was the robber and driver of the stolen vehicle, we cannot say that commentary relating to Lee's absence constituted a material factor in defendant's conviction or worked substantial prejudice to defendant. See *People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432.

We also reject defendant's assertion that the prosecutor's attempt to elicit defendant's opinion of the veracity of the police officers' testimony denied him a fair trial. Since the trial court sustained defense counsel's objection to the single question on this subject before defendant answered, any possible prejudice to defendant was avoided. See *People v. Franklin* (1978), 64 Ill. App. 3d 400, 380 N.E.2d 1082.

Similar questions on cross-examination regarding the veracity of defendant's own testimony did not prejudicially attribute to defendant a

motive other than innocence for his election to proceed to trial. Defendant was asked on direct examination if he had committed the robbery, if he owned a gun and if he wore a straw hat on the night in question. On cross-examination, the prosecutor asked defendant if he would tell the jury if he had committed the robbery. Defendant answered "If I was guilty, I would plead guilty." No objection was made by defense counsel. On cross-examination by Lee's attorney, defendant testified that Lee had never mentioned a robbery or displayed a gun. The prosecutor then asked defendant if he would tell the jury if his friend Lee had told him about the robbery. Defendant said that he would.

■■ Even if defendant had properly preserved his objection at trial, we cannot say that this line of questioning resulted in substantial prejudice to defendant. The questions and responses did not reflect negatively on defendant, nor did they tend to imply that his reason for proceeding to trial was motivated by other than his innocence. *People v. Young* (1975), 33 Ill. App. 3d 443, 337 N.E.2d 40, is inapposite.

Lastly, defendant contends that the following questions asked by the prosecutor on cross-examination of defendant resulted in a violation of *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240:

"Q. You are saying, you are telling the ladies and gentlemen of the jury that you never was asked, you never were asked by any investigator or any officer whether or not you had committed a robbery that night?

MR. MC QUIGG: Objection.

THE COURT: He may answer yes or no.

THE WITNESS: A. Repeat the question, please?

MR. CALLUM: Q. You testified when Mr. Smith asked you on cross-examination, he asked you whether or not you have ever been asked by any police officers whether or not you ever committed a robbery or whether you knew anything about a gun or anything relating to this incident and you told the ladies and gentlemen of the jury that you were never asked any of those questions, is that what you are telling us?

A. Yes, sir.

You are telling us that the police officers never tried to get a statement from you?

A. Well, he tried to get a statement from me but I told him I wouldn't until I talked to a lawyer.

Q. So you were asked certain questions—

MR. SMITH: I object, argumentative.

THE COURT: Sustained. Asked and answered."

■■ Under *Doyle* a defendant's post-arrest silence may not be used to impeach his exculpatory story told for the first time at trial. It is thus error

either to elicit testimony that a defendant remained silent after arrest or to comment during closing argument that a defendant had failed to tell the story at a previous time. (*People v. Upshire* (1978), 62 Ill. App. 3d 248, 379 N.E.2d 38.) Here the questions asked by the prosecutor resulted in eliciting from defendant evidence of his post-arrest silence and thus must be considered within the purview of the *Doyle* restriction. This error, however, does not require reversal ·because we find it to be harmless beyond a reasonable doubt. (*People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857; *People v. Anderson* (1977), 46 Ill. App. 3d 607, 360 N.E.2d 1371.) The evidence against defendant was overwhelming. Besides the identification of defendant by Bradshaw, defendant's possession of recently stolen property and flight from the police were established beyond a reasonable doubt by the arresting officers. The alibi testimony presented by defendant was weak and uncorroborated. We conclude that there was substantial evidence of defendant's guilt, and that any error in eliciting evidence of defendant's post-arrest silence did not contribute significantly to his conviction.

## IV

Defendant next contends that inconsistencies in the identification testimony of the complaining witness renders the evidence insufficient to prove him guilty of armed robbery beyond a reasonable doubt. The determination of a jury will not be disturbed unless there are facts and circumstances which create a reasonable doubt as to defendant's guilt. (*People v. Harris* (1972), 53 Ill. 2d 83, 288 N.E.2d 873.) The sufficiency of eyewitness identification, the credibility of the witnesses, the weight to be given to their testimony and inferences to be drawn therefrom are matters within the province of the jury. (See *People v. Nicholson* (1978), 61 Ill. App. 3d 621, 377 N.E.2d 1063.) Although a conviction cannot stand if identification testimony is vague, doubtful and uncertain (*People v. Hughes* (1974), 17 Ill. App. 3d 404, 308 N.E.2d 137), the testimony of a single witness is sufficient to establish guilt beyond a reasonable doubt provided that the testimony is positive and credible. *People v. Smith* (1978), 59 Ill. App. 3d 480, 375 N.E.2d 941.

■■ The record reveals sufficient evidence to prove defendant guilty beyond a reasonable doubt. Any inconsistency between the trial testimony of the complaining witness and his testimony at the preliminary hearing is a question of credibility to be resolved by the jury. The face-to-face circumstances under which Bradshaw viewed his assailants, plus his recollection of their physical features rather than their clothing, lends credibility to the identification. Bradshaw's identification of defendant as the driver of the vehicle was corroborated by the police officers. The positive identification of defendant only a few hours after the occurrence

must be considered with the fact that defendant was apprehended with the stolen vehicle. (See *People v. Lindsey* (1976), 38 Ill. App. 3d 932, 350 N.E.2d 205.) In our opinion there is sufficient credible evidence to sustain defendant's conviction for armed robbery.

### V

Defendant also asserts that the trial court committed reversible error in giving the following instruction:

"If you find that the defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by armed robbery." (IPI Criminal No. 13.21.)

Defendant contends that permitting the jury to infer from the possession of recently stolen property that defendant obtained the property by armed robbery, resulted in a denial of due process. We disagree.

Numerous Illinois cases hold that the recent, exclusive and unexplained possession of stolen property by an accused gives rise to an inference of guilt, absent other facts and circumstances which leave in the minds of the jurors a reasonable doubt as to guilt. (See, *e.g.*, *People v. Hawkins* (1963), 27 Ill. 2d 339, 189 N.E.2d 252; *People v. Woods* (1963), 26 Ill. 2d 557, 188 N.E.2d 1, *cert. denied* (1963), 373 U.S. 945, 10 L. Ed. 2d 699, 83 S. Ct. 1555; *People v. Barnes* (1963), 26 Ill. 2d 563, 188 N.E.2d 7; *People v. Baker* (1979), 72 Ill. App. 3d 682, 391 N.E.2d 91.) As stated in *People v. Hendricks* (1976), 41 Ill. App. 3d 178, 181, 353 N.E.2d 177, 180:

"Defendant argues that this instruction (a form of Illinois Pattern Jury Instruction Criminal No. 13.21) should not be given in an armed robbery prosecution, because the unexplained possession of recently stolen property bears no relationship to the element of armed robbery pertaining to use or threat of force with a dangerous weapon. However, the purpose of the inference mentioned in the instruction is not to prove the "force" element of robbery, but rather that the defendant was one of the persons involved in the armed robbery described by the witnesses. (*People v. Curtis* (1972), 7 Ill. App. 3d 520, 524-25, 288 N.E.2d 35.) The instruction as to possession of stolen property must be read with all other instructions given to the jury. (*People v. Finch* (1946), 394 Ill. 183, 191, 68 N.E.2d 283.) These instructions adequately informed the jury of the elements of armed robbery."

In addition, the court in *People v. Franklin* (1978), 64 Ill. App. 3d 400, 380 N.E.2d 1082, rejected the defendants' contention that the giving of an instruction on the recent possession of stolen property under circumstances similar to the instant case constituted multiple errors under

*Barnes v. United States* (1973), 412 U.S. 837, 37 L. Ed. 2d 380, 93 S. Ct. 2357. *Barnes* enunciated a two-part test to measure whether an instruction allowing a permissible inference of guilt complied with the requirements of due process. First, there must be a rational connection between the fact proved and the ultimate fact presumed and, second, the evidence submitted to the jury must be sufficient for a rational juror to find the inferred fact beyond a reasonable doubt. We agree, for the reasons stated in *Franklin*, that the permissible inference allowed by such an instruction meets the *Barnes* test and is consistent with principles of due process.

## VI

■■ Finally, defendant urges that we reduce his 4- to 8-year sentence, contending that the trial court erroneously gave defendant an enhanced sentence because it believed defendant had committed perjury at trial. The question of sentencing is within the trial court's discretion, and will not be disturbed on appeal absent an abuse of that discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Unlike *People v. Greenlee* (1976), 44 Ill. App. 3d 536, 358 N.E.2d 649, and *People v. White* (1971), 130 Ill. App. 2d 775, 267 N.E.2d 129, cited by defendant, the record in this case clearly indicates that the trial court considered the veracity of defendant's trial testimony in connection with the defendant's potential for rehabilitation and did not attempt to impose an additional punishment for perjury. We see no abuse of discretion in the sentence imposed.

For the reasons stated the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P. J., and ROMITI, J., concur.