The People of the State of Illinois, Plaintiff-Appellee, *v.* Joseph Blakely, Defendant-Appellant.

(No. 54998;

First District—September 29, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and William K. Hedrick, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

*OFFENSE CHARGED*

Armed robbery against Joseph Blakely and Robert Norfleet. Ill. Rev. Stat. 1967, ch. 38, par. 18—2.

*JUDGMENT*

After a jury trial, both were found guilty, but only Joseph Blakely (hereafter "defendant") has appealed. Defendant's sentence of 8 to 12

years was made consecutive to two prior consecutive sentences of 20 to 40 years and 12 to 18 years.

## CONTENTIONS RAISED ON APPEAL

1. Defendant was denied a fair trial because he was denied effective assistance of counsel.

2. The trial court punished defendant for exercising his right to three separate jury trials by imposing a consecutive rather than a concurrent sentence when his background did not warrant such sentencing.

We affirmed defendant's first sentence of 20 to 40 years in *People v. Norfleet*, 4 Ill.App.3d 758, 281 N.E.2d 761, and the principal facts recited in that opinion provide considerable background for this case.

## EVIDENCE

Testimony in the present case disclosed that on October 7, 1968, at about 11:00 P.M., defendant, armed with a gun, approached a car which was being parked by Mary Harris, accompanied at the time by her 15-year-old son, Ulysses. Mrs. Harris testified that defendant pointed a pistol at her and told her to get out of her car which was a white Cadillac. She opened the door, got out of the car, ran down the street with her son, and then called the police. Ulysses Harris corroborated his mother's testimony.

About a half hour later, John Makar, a Chicago police officer, gave chase to a speeding white Cadillac which matched the description of the Harris car. After chasing it for a short distance, the Cadillac stopped and its four occupants fled down an alley. The officer pursued one of the suspects, who turned out to be defendant, and assisted in his arrest when he was cornered in the stairwell of a nearby building. At the time of his arrest, defendant carried a pistol which was later identified as the same gun taken from a security guard in a bus robbery earlier that evening.

## OPINION

First, defendant argues that he was denied a fair trial because he was represented by ineffective counsel. He submits that there was a lack of trust between himself and his attorney which is disclosed by the implication in the record that his counsel pressured him to plead guilty so as to receive a more lenient sentence, and by counsel's contradiction of defendant's claim that the jury was prejudiced against him. He charges that counsel showed a lack of interest in his fate, and thus a motion which he made for substitution of another court-appointed attorney was improperly denied. He further contends that his own counsel prejudiced him in the eyes of the jury by using the name Joseph Blakely when asking witnesses about whom they saw rather than asking about the man who committed the offense. He also charges that counsel failed to pursue a certain line of questioning which defendant perceives as valuable. Fi-

nally, defendant contends that counsel produced no evidence in mitigation, the result being a perfunctory hearing devoted only to the introduction by the State of matters in aggravation.

■■ Allowance of a motion for appointment of successive defense counsel, neither of whom is the public defender, is discretionary with the trial judge, and defendant's professed lack of confidence or displeasure with his attorney does not entitle him to demand his withdrawal in favor of one "who agrees with defendant's particular trial tactics and strategy." *People v. Gray*, 33 Ill.2d 349, 354, 211 N.E.2d 369.

■■ Also, there is no testimony in the record to suggest that defendant's attorney advocated a guilty plea in exchange for more lenient treatment by the court, even though that may well have been the wiser course to follow in this case. There is in the record a *pro se* motion "to defend in person as well as by counsel of his choice" in which defendant asks to be allowed to confront witnesses and question them. However, we believe that this request, standing alone, fails to make defendant's point as to improper pressure by counsel for a waiver of defendant's right to a jury trial, which, of course, he did receive.

■■ The next conflict between counsel and defendant arose when defendant charged that he would be denied a fair and impartial trial because at least four of the jurors "were associated with policemen" and "some of the people had been robbed and this is a robbery case." There is no report of proceedings covering the *voir dire,* but defendant's attorney advised the court that absolutely no juror had been selected who had personally been involved in a crime or who had any member of his family connected with the police department. The judge agreed with counsel and observed that the jury chosen should afford defendant a fair and impartial trial, and he had been assured by each juror that nothing in his past would reflect upon his final judgment.

■■■ An indigent defendant does not have the right to choose his court-appointed counsel. (*People v. Cox,* 22 Ill.2d 534, 537, 177 N.E.2d 211.) He does, however, have the right to be represented by competent counsel. (*People v. Woods,* 26 Ill.2d 557, 560, 188 N.E.2d 1.) When the question arises as to the inadequacy of a defendant's representation, he bears the burden of establishing actual incompetency of counsel. (*People v. Caise,* 38 Ill.2d 486, 489, 231 N.E.2d 596.) To sustain this burden, he must clearly establish: "(1) actual incompetency of counsel, as reflected by the manner of carrying out his duties as a trial attorney; and (2) substantial prejudice resulting therefrom, without which the outcome would probably have been different." *People v. Logue,* 45 Ill.2d 170, 172, 258 N.E.2d 323; *People v. Georgev,* 38 Ill.2d 165, 169, 230 N.E.2d 851; *People v. Morris,* 3 Ill.2d 437, 449, 121 N.E.2d 810.

■■ Contrary to defendant's assertions, a review of the record shows that his attorney was well versed in trial techniques and was adequately prepared for the defense of his client. When questioned by the court about defendant's claims, the attorney informed the court that he had represented defendant in a prior trial under one of the other indictments; that the trial had lasted more than a week, and that he was familiar with every aspect of the present case. The record discloses nothing in counsel's method of cross-examination or his line of questioning which substantially prejudiced defendant, nor is there any indication that different strategy or conduct of the case would have changed the outcome.

At the hearing in aggravation and mitigation, counsel requested a concurrent rather than consecutive sentence, but the court, without stating its reason, denied his request. Although the hearing was not extensive, we believe it was not merely perfunctory. In this regard, defendant argues further, however, that by imposing a consecutive rather than a concurrent sentence, the trial court was punishing him for having exercised his right to three separate jury trials.

■■ A trial court may in its discretion impose consecutive sentences when the multiple offenses did not result from the same conduct. (Ill. Rev. Stat. 1967, ch. 38, par. 1—7(m).) Thus, there is no question in the instant case as to the authority of the court to impose a consecutive sentence, but we are concerned as to whether, under all the circumstances here before us, it amounted to an abuse of discretion. We believe we may also consider this question under our power derived from Supreme Court Rule 615 (Ill. Rev. Stat. 1971, ch. 110A, par. 615), to reduce punishment.

■■ We recognize that a reviewing court must use great caution in reducing or modifying sentences (*People v. Nelson*, 127 Ill.App.2d 238, 248, 262 N.E.2d 225); and the power to alter a sentence will be exercised only to prevent arbitrary or oppressive sentencing, to provide sentences proportionate to the crime, and to reflect the varying rehabilitation potentials of the defendant. See *People v. Taylor*, 33 Ill.2d 417, 424, 211 N.E.2d 673, affirmed on appeal after remand 40 Ill.2d 569, 241 N.E.2d 409, and *People v. Ramey*, 115 Ill.App.2d 431, 253 N.E.2d 688.

Although we find nothing in the record to indicate that the judge was being vindictive for defendant's election of jury trials, we do conclude that he abused his discretion by sentencing a 22-year-old defendant with no prior felony convictions to consecutive sentences which, with this sentence, could possibly total 64-70 years. (See *People v. Holmes*, 127 Ill.App.2d 209, 215, 262 N.E.2d 45.) Needless to say, we do not condone the offenses committed by this defendant, but we must recognize that under those sentences there could scarcely be any real test of his desire

to rehabilitate himself, and, although we cannot predict whether such desire exists, we believe that long consecutive sentences for this related series of three offenses (all committed within about an hour) do not provide a reasonable opportunity for rehabilitation. They also, we believe, foreclose the Parole Board from the performance of its function at a time far in the future when it, rather than we, will be in the best position to judge the risk involved in returning this defendant to society as a free man.

Defendant's sentence is therefore modified so as to run concurrently with his prior sentence of 20 to 40 years, and as so modified it is affirmed.

Judgment modified and affirmed.

LORENZ, P. J., and DRUCKER, J., concur.