THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MILTON MASTIN, Defendant-Appellant.

First District (4th Division)   No. 62518

Opinion filed August 25, 1976.

James R. Streicker and Allen L. Wiederer, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

Following a bench trial, Milton Mastin (hereinafter called "defendant") was convicted of attempt murder and aggravated battery, and was sentenced to a term of four to six years in the State penitentiary. Defendant was indicted as a co-defendant with Billy Jenkins, but the defendants were granted separate trials.

The issue on appeal is whether the defendant was proven guilty beyond a reasonable doubt of attempt murder by accountability.

Defendant's brief on appeal also raised an issue as to whether the defendant was improperly convicted of two crimes arising from a single act, and on this question the State has confessed error and now recommends reversal of the aggravated battery conviction.

Defendant was charged in connection with the shooting of William Johnson, which occurred at 10:30 p.m. on March 18, 1973, in the city of Chicago.

The events leading to the shooting commenced earlier on March 18, 1973, when a fight occurred between Jenkins' sister, Juanita Jones, and Johnson's sister, Johnnie Mae Allen.

While Johnnie Mae Allen walked with William Johnson toward her home at 64th and South Normal, they were stopped by a car containing five passengers. Juanita Jones got out and the car, with its remaining four passengers, continued northbound on Normal Avenue toward 63rd Street, where it stopped and was parked. Juanita and Johnnie Mae immediately engaged in a heated argument in the street. William Johnson intervened in this fracas only to disarm Juanita, who was brandishing a weapon (described by witnesses as a knife or a pipe). After this interference, William Johnson moved away from the two arguing women.

As to the events which followed, the State presented three witnesses. Testifying were William Johnson (the victim), Johnnie Mae Allen (his sister) and Herbert Bailey (the arresting officer).

While the argument between the two women continued, Johnnie Mae, who was facing north toward Juanita, and in the direction of 63rd Street, noticed three men exiting the car in which Juanita Jones had arrived. Johnnie Mae identified two of the three as Billy Jenkins and Milton Mastin. She particularly watched Jenkins as the three approached, since

he was Juanita's brother, with whom she was still arguing. As the men came closer, Johnnie Mae Allen saw the defendant hand his gun to Billy Jenkins. Mastin and Jenkins then proceeded past the two women and on toward Johnson, who was talking to a Mrs. Felton, and was not aware of their approach.

Upon Mrs. Felton's warning, Johnson turned to find his attackers upon him. The victim attempted to back away from the armed aggressors, but was stalled in his efforts while backing up, into a tree. Sighting an opening between two parked cars, Johnson renewed his flight only to discover the opening had been blocked by the defendant, who obstructed Johnson's retreat to safety. The defendant then drew back to strike the victim, who fell, eluding the blow. Taking advantage of Johnson's defenseless position, Jenkins emptied Mastin's gun at Johnson, with one of the shots striking the victim in the hip. As Johnson got up, he was grabbed from behind by the defendant. Upon his accomplice's order to "Move back. Let me shoot," Mastin released Johnson. Jenkins' renewed attempt to murder Johnson failed, as the gun proved to be empty. Johnson then sprung at Jenkins, knocking the gun loose to the ground, and entangling the three men in fisticuffs, whereupon a police car arrived. Noticing the lights and siren of the approaching police car, the defendant and his confederate ceased beating their victim, and together fled northward toward their parked car. Johnson approached the police car and, while leaning against it, and holding his wound, handed Officer Bailey the defendant's gun and identified the two assailants, who were but 10 to 15 feet away and fleeing the scene. At this point, Officer Bailey approached Mastin and Jenkins and placed them under arrest.

At the trial, Officer Bailey testified Mastin and Jenkins were 10 to 15 feet away from him when he was told they were the assailants.

The defense contended the defendant was not at the place of the shooting, but had remained by the parked car, some 60 feet further north on Normal, near 63rd. James Holiday, a lifelong friend of the defendant, testified that at around 10 p.m. on the night in question he, Billy Jenkins, Juanita Jones and Doris Atkins were leaving Mr. Jenkins' apartment at 8200 South Eberhart when they bumped into the defendant who was leaving his apartment, which is in the same building. The defendant said this was the first time he ever brought his gun outside with him, stating that twice during some time in the past he had been robbed.

Mastin alleged he was accepting a ride with Jenkins as far as 64th and Normal on Mastin's way to 73rd and Union. Holiday testified the car was heading north on Normal when the victim started walking alongside the car shouting, "You looking for me? Here I am."

The defense witnesses contended all three men in the back seat of the car exited through the left rear door, stating the right rear door was

jammed. As the defendant, the last of the three men, was exiting the car, his coat was pushed back revealing his weapon. The gun was then grabbed by Jenkins, without any objection by Mastin, as Jenkins rushed away before the defendant could stop him.

Both Holiday and the defendant testified it was Holiday who accompanied Jenkins back down Normal, while Mastin remained at the car. Since Mastin claimed to have been 50 to 60 feet away from where the shooting occurred, he could testify no further as to the events which took place, except to state he was still back at the car when the police officers ordered him to join the others down the street.

The defendant claims he was not proven guilty beyond a reasonable doubt. The accountability section of the Illinois Criminal Code provides, in pertinent part:

> "A person is legally accountable for the conduct of another when * * * [e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. * * *" Ill. Rev. Stat. 1973, ch. 38, par. 5—2.

Confronting the court are two totally inconsistent and opposite theories of what actually happened on the night of March 18, 1973, as presented before the trial court through the testimony of five witnesses: the victim, his sister, and a Chicago police officer, versus the defendant and his life-long friend.

By the testimony of the State's witnesses, Milton Mastin partook in the search for the intended victim, William Johnson. While approaching Johnson, Mastin provided Jenkins with the instrumentality of the crime. As Johnson ran for safety, it was Mastin who prevented his escape and moved to strike him, thus placing Johnson in an even more precarious position. Again, it was Mastin who grabbed the victim, to release him only upon Jenkins' express desire to finish him off.

If this evidence is believable, it is clear the defendant, both before and during the commission of the offense of attempt murder, and with the intent to promote and facilitate such commission, aided and abetted his confederate Jenkins in the commission of said offense.

As mentioned above, the trial court was confronted with two totally inconsistent and opposite theories of what happened. But, mere existence of conflicting testimony will not of itself create a reasonable doubt.

The law is well settled in Illinois in regard to a certain aspect of deference owed to a trial judge by courts of review. In the absence of a jury, the credibility of witnesses, the weight to be given their testimony and the inferences to be drawn therefrom are for the trial judge and, upon review, courts of review will not substitute their judgment for his unless it

clearly appears there is reasonable doubt of defendant's guilt. See *People v. Guido* (1962), 25 Ill. 2d 204, 184 N.E.2d 858.

Here, it was the province of the trial court, who was aware of the interests of the witnesses in the outcome of the trial, to determine the truth of the matter.

Upon review of the entire record, we are convinced the evidence fully supports the trial court's finding of guilt for the offense of attempt murder by accountability.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed as to the conviction of attempt murder, and reversed as to the conviction of aggravated battery.

Affirmed in part and reversed in part.

JOHNSON, P. J., and BURMAN, J., concur.