THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEVEN B. NICHOLSON, Defendant-Appellant.

First District (3rd Division)   No. 76-727

Opinion filed May 31, 1978.

Charles I. Schwartz, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court: Steven B. Nicholson was indicted on the charge of armed robbery. (Ill. Rev. Stat. 1971, ch. 38, par. 18—2.) Following a jury trial he was convicted of the offense of robbery and was sentenced to a term of imprisonment in the penitentiary of one to five years. He now appeals that conviction, raising four issues for review: (1) whether it was reversible error for the court to instruct the jury on the lesser included offense of robbery; (2) whether the trial court committed reversible error in the manner it conducted the *voir dire* examination of prospective jurors; (3) whether he was proven guilty beyond a reasonable doubt, and (4) whether a mistrial should have been declared when a witness communicated Nicholson's prior criminal record to the jury.

Nicholson's conviction was based upon his participation in a purse-snatching incident which occurred on the evening of December 24, 1973, in the vicinity of Rockwell and Cortez Streets in Chicago. The street immediately south of Cortez is Augusta Boulevard.

The victim of the purse-snatching incident was Virginia Bartush, a medical student at Loyola University. She testified that at approximately 11 p.m., on December 24, 1973, she was walking north on the east side of Rockwell, going to get her car. When she was about three-quarters of a block north of Augusta, a young man suddenly came up behind her and tried to grab her purse. The assailant was unsuccessful, however, and ran away. Although she was able to see his face only "fleetingly" she did observe the clothing he was wearing. Bartush stated that the attacker was wearing tight, beige levis which stopped about three inches above his ankles. His shoes had a "stripe or something" on the side and had light soles with two-inch heels. Bartush also noted that he was wearing a light cotton jacket.

After the assailant left, the complainant stated that she continued walking north along the east side of Rockwell, crossing Cortez. There is a

church on the northeast corner of Rockwell and Cortez and Bartush was approximately halfway down the length of the church when the man ran up to her and again attempted to take her purse. As he ran toward her Bartush testified that the light reflected something he held in his hand as "* * * it was a short small knife. It appeared to be a small knife." She struggled with the man for approximately a minute and a half, during which time she was looking down at the assailant's face which was less than a foot from hers. Finally, because the assailant's tugging on the purse was hurting her arm, Bartush let him take the purse, after which the man. ran away.

The area in which Bartush was accosted was lit by streetlight. She testified that there was a streetlight at the alley between Cortez and Augusta as well as one at the alley between Cortez and Thomas, the street north of Cortez. In addition, there was a light at the corner of Cortez and Rockwell.

The police arrived about 15 minutes later. Bartush recalled that she described her attacker to the police as a black man, about 23 years of age, approximately five feet, six inches tall, weighing about 140 pounds and of slight build. His hair was black and about 2½ inches long; it was wet and falling down "in ringlets" on his forehead. His eyes were dark brown. She also recalled that she told the police the attacker had a slight mustache, but no other facial hair. Bartush stated that she never made any statement to the police about the complexion of her assailant other than he was black.

Officer Kukielkh, one of the officers to whom this description was given, testified on Nicholson's behalf. The description that he recalled the complainant giving contained nothing about the assailant having a mustache or having a slight build. However, he did claim that she described him as having a dark complexion.

On December 26, 1973, Bartush was contacted by Officer Robert Schultz of the Chicago Police Department by telephone. In that conversation she told him that, in addition to the characteristics she previously related, her assailant also had one bad eye. Officer Schultz testified that Bartush also told him the assailant had a "medium" complexion.

Two days later Officer Schultz came to Bartush's home with some photographs for her to examine. While she did not recognize anyone from among a number of small individual photographs, she identified Nicholson from a group of large photographs of lineups. In early January Schultz returned to Bartush's residence with a single small photograph of Nicholson, at which time she again identified him as her assailant.

Bartush made another identification of Nicholson at his preliminary · hearing. She testified that at the hearing she heard the clerk call the

defendant's name immediately prior to calling hers and that she was familiar with Nicholson's name before the hearing. In addition, the evidence showed that Nicholson was attended by a uniformed police officer at this hearing and that he was the only black male in the area of the judge's bench when Bartush made her identification.

At trial the complainant again identified Nicholson as her assailant. She also agreed that, at the time of trial, Nicholson had a small goatee and that he had the same goatee in the photographs from which she identified him.

Nicholson presented an alibi defense. He claimed that he spent December 24, 1973, at his mother's residence at 3544 South State Street in Chicago, along with his wife and three children. In addition, his 12 brothers and sisters, as well as four or five other individuals were also at his mother's home during that day. At about 9:30 that evening, Nicholson claims that his wife and three other individuals left to go to a bar, but he stayed at the apartment. About 10 p.m., he and one of his sisters began assembling Christmas toys, a task which lasted three or four hours. Nicholson claimed that his wife returned at about 2:30 or 3 on the next morning, and that he eventually left his mother's house about noon on December 25 having eaten his Christmas dinner at 10 in the morning. Nicholson also testified he had an artificial left eye and that it had been artificial since he was 10 or 11 years old.

Nicholson's mother, sister and wife presented essentially the same story as to the occurrences on the evening in question. However, Nicholson's wife claimed that she had dinner at her mother-in-law's residence on the evening of December 25.

The first argument presented by Nicholson is that the court erred in tendering to the jury an instruction on the offense of robbery. The indictment returned against Nicholson charged him only with armed robbery. At the conference on instructions, the State requested that the court instruct the jury on the lesser included offense of robbery. Over Nicholson's objection, this instruction was given. It is Nicholson's position on appeal that the instruction should not have been given since the evidence does not support a verdict of guilty for the offense of robbery.

■■■ In order to reduce the possibility of a compromise verdict, an instruction on the lesser included offense of robbery is considered to be improper where the evidence shows that the accused is either guilty of the higher offense of armed robbery or not guilty of any offense. (*People v. Keagle* (1967), 37 Ill. 2d 96, 224 N.E.2d 834; *People v. Thompson* (1976), 35 Ill. App. 3d 773, 342 N.E.2d 445.) However, since the evidence presented at trial raised a factual issue as to the existence of a dangerous weapon, we believe that this principle is not controlling in the instant case. Bartush testified that the second time the attacker accosted her she

noted something shiny in his hand. The relevant testimony reads as follows:

> "As he came running up I saw a flash, you know, a light. The light reflected something that he had in his hand. And it was a short small knife. It appeared to be a small knife."

Bartush's statement that the object which the assailant held "appeared to be a small knife" introduces an inference of equivocation into her testimony. This statement is open to a number of reasonable interpretations, among them is the interpretation that Bartush was uncertain whether the assailant held a knife or any other dangerous weapon in his hand. The jury could reasonably interpret this statement as indicating that the assailant was not armed. The defendant never directly challenged Bartush's testimony but rather relied upon an alibi defense. It is not necessary for a defendant to directly challenge the State's evidence to raise a factual issue. We. therefore, conclude that the court did not err in instructing the jury on the offense of robbery.

The second issue raised by Nicholson is whether the court committed reversible error in its conduct of the *voir dire* examination of prospective jurors. Nicholson initially argues that the court improperly denied his request to have defense counsel personally conduct the examination. In the alternative, Nicholson maintains that he is entitled to reversal because the examination actually given by the court was conducted in a prejudicial manner.

In asserting that defense counsel had a right to directly examine the veniremen, Nicholson relies upon the second sentence of section 115—4(f) of the Criminal Code of 1961. (Ill. Rev. Stat. 1975, ch. 38, par. 115—4(f).) This sentence was added to the code, effective October 1, 1975, and provides that both counsel for the State as well as counsel for the defendant have the right to conduct their own *voir dire* examination of each prospective juror. The statutory section conflicts with Supreme Court Rule 234 (Ill. Rev. Stat. 1975, ch. 110A, par. 234) which makes it discretionary with the trial court as to whether the parties may directly question prospective jurors or whether their participation is to be limited to submitting supplementary questions for the court to ask the veniremen.

■■ The Illinois Supreme Court in *People v. Jackson* (1977), 69 Ill. 2d 252, 371 N.E.2d 602, has recently resolved this conflict by declaring that the second sentence of section 115—4(f) is unconstitutional. The court reasoned that because the Illinois Constitution of 1970 granted to the Supreme Court the exclusive responsibility to make rules for the general administration and supervision of all Illinois courts and because the *voir dire* falls within the ambit of this authority, the legislative provision is void. A statute which is declared unconstitutional is null and void as of the

date of its enactment. (*Peterson v. Montegna & Co.* (1956), 11 Ill. App. 2d 109, 136 N.E.2d 586.) Therefore, the trial court was under no duty to abide by the proscriptions of the amendment to section 115—4(f) and committed no error when it failed to do so.

Nicholson also claims that reversible error resulted from the manner in which · the court actually examined the prospective jurors. He first contends that the court erroneously failed to ask the prospective jurors two supplemental questions which he had tendered to the court, namely,

> 1. "The Defendant will call as alibi witnesses, members of his family. Does this fact alone influence your ability to judge their testimony in other than the manner in which you will judge the testimony of other witnesses? In other words, does the family connection of said witnesses make them incredible to you, or less credible to you before you have heard them testify?"
> 2. "A dangerous weapon is alleged to have been used in this case. Do you own any weapons?"

He claims that the failure to ask these two questions impaired his ability to properly exercise his peremptory challenges.

■■ The scope of the *voir dire* examination lies within the discretion of the trial court. (*People v. Lowe* (1975), 30 Ill. App. 3d 49, 331 N.E.2d 639.) While a reversal of the conviction of a criminal defendant may be necessary where the court so abused this discretion that the defendant was prevented from intelligently exercising its right to challenge the veniremen (*People v. Carruthers* (1974), 18 Ill. App. 3d 255, 309 N.E.2d 639), such abuse has not been shown here. These questions had a greater propensity to highlight particular aspects of the defendant's case than to expose biases of the veniremen which would deny the defendant an impartial hearing of his case. The purpose of the *voir dire* is to select a fair and impartial jury; it is not to be used as a means of preeducating or indoctrinating a jury or as a means of empanelling a jury with particular predispositions. (*Gasiorowski v. Homer* (1977), 47 Ill. App. 3d 989, 365 N.E.2d 43; *People v. Barksdale* (1976), 44 Ill. App. 3d 770, 358 N.E.2d 1150.) The record reveals that the court engaged in a very thorough and carefully constructed *voir dire* examination. It was highly sensitive to the interests of the parties and was very cooperative with defense counsel in tendering supplemental questions to the prospective jurors. Given these circumstances, we cannot say that the court erred in refusing to ask these two questions of the veniremen.

Nicholson also asserts that his examination of the prospective jurors was impaired when the court refused to permit him to ask additional questions of a venireman who had already been dismissed for cause. During the *voir dire,* one individual indicated that one of the assistant State's attorneys had previously prosecuted a friend. A side bar

conference was immediately held, at which time the State challenged the juror for cause. The court granted the State's motion over defense counsel's objection that further questioning was necessary to determine if grounds for cause actually existed. Nicholson claims that the court committed reversible error by preventing him from determining whether grounds for dismissal for cause existed.

■■ Nicholson does not argue that the court's alleged error resulted in the empanelling of a biased jury but rather he contends that a prospectively unbiased venireman was erroneously excluded from the panel. The right to be tried by a fair and impartial jury does not encompass the right to have any particular individual included on the panel. (*People v. Lobb* (1959), 17 Ill. 2d 287, 161 N.E.2d 325.) Thus, no prejudice results when the court prohibits further examination of a venireman who has already been dismissed. (*Pushauer v. Demers* (1967), 86 Ill. App. 2d 251, 229 N.E.2d 908.) Moreover, the record shows that the State did not use its full complement of peremptory challenges so that if the challenge for cause had not been sustained, the State could have eliminated this candidate from the panel. Therefore, we conclude that the refusal to permit the defendant to further question the venireman once the State's challenge for cause had been sustained did not constitute reversible error.

Nicholson next contests the sufficiency of the evidence to support his conviction. In essence, the jury here was faced with the choice of believing either the identification testimony of Bartush or the testimony of Nicholson and his alibi witnesses. A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses and will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt as to guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) A single credible witness who had an ample opportunity to observe the defendant and who provided a positive identification can supply sufficient evidence to support a conviction even though such testimony is contradicted by the alibi testimony of the accused. *People v. Manion; People v. Smith* (1977), 52 Ill. App. 3d 583, 367 N.E.2d 756.

Bartush's identification of Nicholson as her assailant was both positive and unequivocal; not only did she identify him from photographs, but she also identified him at the preliminary hearing and again at the trial. The fact that a lineup was not held does not reduce the credibility of her identification. Her credibility is enhanced by the fact that she was able to observe her assailant's face from extremely close range for a minute and a half. While the altercation took place outside, at night, Bartush testified that each encounter took place relatively near a streetlight. Moreover, she provided the police with an extremely thorough description of her

attacker, including specific details of both his clothing and his facial characteristics. The fact that she never told the police that the assailant had any facial hair other than a mustache does not, we believe, render her testimony unbelievable. The credibility of identification testimony does not depend upon precise accuracy in describing facial characteristics (*People v. Catlett* (1971), 48 Ill. 2d 56, 268 N.E.2d 378; *People v. Smith*) especially where, as in this case, the goatee which she failed to describe is not a very prominent feature of Nicholson's face.

Nicholson urges this court to discount Bartush's identification on the basis of her alleged statement to the police that her assailant had a dark complexion. The photograph from which Bartush initially identified Nicholson was of a lineup containing only black individuals and Nicholson had the lightest complexion of all of the participants. From this Nicholson contends her identification is highly questionable. We must disagree. There is conflicting testimony as to Bartush's statement relative to the complexion of the defendant. Only one officer testified that she made such a statement. Bartush claimed that she never made any statement as to the complexion of her assailant, while another officer claimed she described him as having a medium complexion. Assuming that she did make such a statement, we believe that such a discrepancy is in the nature of precise detail which, standing alone, will not serve to raise a reasonable doubt as to the defendant's guilt.

■■ Likewise, the other alleged discrepancies in Bartush's testimony which Nicholson cites are insufficient to raise a reasonable doubt as to the defendant's guilt. On cross-examination she testified that she could not recall if she told the police that the assailant had a slight build, while on redirect she did state that she did make such an assertion. We think this variance related more to her ability to recall what she told to the police than to the accuracy of her identification. Similarly, the fact that only during the cross-examination not during the direct or redirect examination did Bartush testify about her attacker's bad eye does not, in any manner, reduce the credibility of her testimony. The evidence remains unequivocal that she did tell the police about the eye prior to the time she made her initial identification of Nicholson from the lineup photographs and that Nicholson did have one artificial eye. After considering all of the evidence presented in this case, we hold that Nicholson was proved guilty beyond a reasonable doubt.

The last issue raised by Nicholson is whether the court erred in not declaring a mistrial when Officer Schultz inadvertently disclosed that Nicholson had a prior arrest record. This information was revealed during cross-examination by Nicholson's counsel when the following exchange took place:

"Q [Nicholson's counsel]. On that date did you go to Mr. Nicholson's house to arrest him?

A [Officer Schultz]. I don't recall what date I went. I didn't know where he lived. All I had was an address from prior arrest. I didn't have no personal knowledge of the man."

The court, on its own motion, immediately recessed the proceedings. During the ensuing conference, held outside the hearing of the jury, Nicholson moved for a mistrial based upon the witness' disclosure; this motion prompted the following discussion:

"The court: You are making no motion for me to strike [the reference to the prior arrest]?

[Nicholson's counsel]: Not at this point. At this point I am making a motion for a mistrial."

The court subsequently denied his motion, but nowhere in the record is there any indication that Nicholson ever moved to strike Schultz's statement.

■■ ■ Evidence relating to prior arrests of an individual is generally inadmissible into evidence if they have no relevance to the question of the guilt of the defendant other than the inference that he has a propensity to commit crimes. (*People v. Bennett* (1953), 413 Ill. 601, 110 N.E.2d 175; *People v. Hudson* (1972), 7 Ill. App. 3d 333, 287 N.E.2d 297.) Yet the erroneous introduction of evidence of a defendant's prior criminal conduct does not, per se, constitute grounds for reversal; such an error may be considered harmless where the evidence shows that the defendant is guilty beyond a reasonable doubt. (*People v. Jordan* (1974), 18 Ill. App. 3d 133, 309 N.E.2d 274.) We have already determined that there is substantial evidence to support Nicholson's guilt. Therefore, we believe that any error arising from the inadvertent statement by Officer Schultz is harmless.

Neither *People v. Williams* (1966), 72 Ill. App. 2d 96, 218 N.E.2d 771, nor *People v. Johnson* (1973), 11 Ill. App. 3d 745, 297 N.E.2d 683, persuade us to rule otherwise. In *Johnson* this court held that any error arising from a reference by a police officer testifying for the State to a defendant's "criminal history sheet" was cured by the trial court's action in immediately striking the reference and issuing cautionary instructions. In citing *Johnson*, Nicholson suggests that since in the instant case the court took no such immediate action, the error cannot be considered harmless. However, not only did Nicholson himself fail to request that the court strike the testimony, but he effectively ignored an offer by the court to do so. Moreover, while we agree that cautionary instructions may serve to cure the prejudice arising from the introduction of evidence of prior criminal activity, it is not the only way that the erroneous admission of

evidence of prior criminal activity may be rendered harmless. Thus, we believe that *Johnson* is not relevant to this case.

In *Williams*, the defendant sought reversal of his conviction for burglary based upon three grounds, including the argument that the court erroneously denied a motion for a mistrial following disclosures by a State's witness that the defendant had a prior criminal record. During the cross-examination, the witness, a police officer, stated that he originally obtained a description of the burglar from another report. When asked if he still had the report, the officer indicated that the report covered another burglary involving the same defendant. This same witness, on redirect examination, also stated that he had previously seen the defendant "in pictures and his record, his police record." A motion for mistrial was made after each disclosure and each time the trial court denied the motion.

*Williams*, we believe, is distinguishable on two grounds. First, although this court disapproved of the disclosures of William's prior criminal activity, it also found error with respect to the two other issues raised by the defendant and in reversing the conviction, never specified which ground it was particularly relying upon in ordering a new trial. The inference would seem to be that reversal was based upon the cumulative effect of the three errors and not solely upon the prejudice arising from the introduction of the evidence as to the past crimes. (See *People v. Christy* (1976), 43 Ill. App. 3d 1004, 358 N.E.2d 8.) Second, the evidence of the prior crimes actually presented to the jury was stronger in *Williams*. The police officer twice offered testimony which inferred that the defendant had a prior criminal record. In addition, one of the other errors raised by Williams to support his reversal was that photographs bearing the legend of a State prison had been exhibited to the jury; the objection to these photographs was essentially the same as the objection to the officer's statements on Williams' prior criminal record. The jury in *Williams* was subjected to a great deal more evidence of the defendant's prior criminal activity than was the jury in the present case. Because we believe that the inadvertent statement by Officer Schultz was harmless, we do not believe that Nicholson is entitled to a new trial.

Having found that none of the issues raised by Nicholson on appeal entitles him to a reversal of his conviction, we affirm the judgment of the Circuit Court of Cook County.

Affirmed.

McNAMARA and SIMON, JJ., concur.