134

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GEORGE P. COOK, Defendant-Appellant.

Fifth District    No. 78-142

Opinion filed May 1, 1979.

G. MORAN, P. J., dissenting.

Richard J. Wilson and David Bergschneider, both of State Appellate
Defender's Office, of Springfield, for appellant.

Patrick Hitpas, State's Attorney, of Carlyle (Robert D. Perry and Karen L.
Boyaris, both of State's Attorneys Appellate Service Commission, of counsel), for
the People.

Mr. JUSTICE KUNCE delivered the opinion of the court:

The defendant, George Cook, appeals from his conviction for
attempt rape. The defendant was convicted by a jury in the Circuit Court
of Clinton County of attempt rape and attempt murder. Relying upon
*People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888, the trial judge
properly ruled that the attempt murder instructions were incorrect and
granted defendant a new trial on the attempt murder charge.

The only issue raised on this appeal is whether the State's closing
argument deprived the defendant of a fair trial. The defendant takes
exception to the following portion of that argument:

"STATE'S ATTORNEY: *Now as to the attempt murder*. He
stabbed her and when you stab someone in the chest you do it with
the intent to do great bodily harm or kill her. For a fleeting moment
and like I said, I don't think he went back there with the intent to
kill her, but when she resisted he did. She's the only witness to his
attempt rape. She's the only one who can say who did it. And if

she's not there no one knows who did it. He's home free if she dies probably. Luckily, she didn't. He's home free because no one is in that trailer. It's in the early morning hours. Nobody knows he stabs her. He's back with his girl friend Mary Daily later in the evening. I submit to you this is attempt murder. It's not aggravated battery. He says, why are we on trial here? Why do we come in here to have a trial? Well both sides have a right to a trial. That's fair. It's the way it should be. We're on trial here because on the 21st of July, 1977 in my office we filed a charge of attempt murder. From that day until the 30th of November, today's date, I have said and I maintain this charge is attempt murder, it will remain attempted murder, it will not be reduced to anything less. And that's why we're on trial in this courtroom. Because I've said its attempted murder. I've researched it. I've checked it. We've talked to the witnesses and we've presented it to you. It is attempt murder. Nothing less. He's got nothing left. Why not come in here and roll the dice? He either pleads guilty to attempted murder as is or he goes to trial.

MR. DUNSTON [Defense Counsel]: I'm going to object to the nature of the state's comments in that regard.

THE COURT: The court would caution the jury that the court will explain the law to you and you are the judges of the facts when you apply that to the law and you're not to decide this case on what the state's attorney thinks but on what you think.

THE STATE: You listen to what the judge tells you. But why are we here? The question was first asked by them, not by me, why are we in this courtroom on trial? We're on trial because roll the dice. Why not take a shot at it?

MR. DUNSTON: Your Honor, I object again and I would ask that the record note that objection.

THE COURT: I will sustain that objection. I will sustain that objection. And disregard those remarks.

THE STATE: You know why we're here.

MR. DUNSTON: Again Your Honor I object.

THE COURT: I would suggest to the jury that every defendant charged with an offense is presumed innocent and has a right to have a trial on these matters for any reason and I would ask you to ignore those remarks of the state's attorney.

THE STATE: Everyone has a right to a trial. We've given this man his trial. You've heard the evidence. And without question, he's guilty of attempted murder. He's guilty of attempted rape. If we're going to turn him out of here and just slap his wrists with aggravated battery, I just don't know what it will come to. Are we

going to send a man out of here that goes into a woman's bedroom in the middle of the night with a knife and does what we've heard he did? Stabs her twice and say let's slap your wrist with aggravated battery and send you out of here? I submit the twelve of you are not going to go to that extent and I thank you.

THE COURT: I would again caution the jury that if the state's attorney seems to have given his opinion you are not bound by his opinion. You are to be the finders of the fact and you are to consider the law in regard to this matter.

THE STATE: Well Your Honor, Mr. Dunston comments, I comment. I have every right to comment. I don't think it's proper for the court to comment on this.

THE COURT: Well I have ruled on this Mr. Hitpas. Please set down." (Emphasis added.)

The State contends that the foregoing was either invited comment by the defendant or harmless error.

Defendant had been staying at the home of prosecutrix and her boyfriend, who was working out of town on the evening of the offense. After watching television with the defendant, the prosecutrix went to bed after changing into a floor length bath robe. When she awoke, defendant had his hand between her legs near her vagina, and she asked him what he was doing. Defendant then stabbed her with a paring knife he had gotten from the kitchen, choked, beat, and knocked her to the floor. Defendant then got close to her and stated that he only wanted to have intercourse with her. Defendant did not unzip or tear her robe nor did he take off or unzip his pants. The prosecutrix passed out. Defendant subsequently gave a statement to the police after he was apprehended.

We have examined the entire record on appeal and find that the evidence against the defendant was overwhelming. The defendant admitted the acts constituting the offense in a signed statement. Portions of the prosecutor's closing argument were improper and deliberate indeed, and the prosecutor could have been held in contempt for continuing his line of argument. However, the court properly sustained defendant's objections thereto and cautioned the jury to disregard them (see *People ex rel. Woodward v. Oliver* (2d Dist. 1975), 25 Ill. App. 3d 66, 322 N.E.2d 240, *cert. denied* (1975), 423 U.S. 927, 46 L. Ed. 2d 255, 96 S. Ct. 275). Such remarks do not constitute reversible error unless they result in substantial prejudice to the accused. (*People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881; *People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630.) Furthermore, the prosecutor's arguments alluded to the attempt murder charge only which has been set aside. Based on the record before us, we cannot say that the State's comments deprived defendant of a fair trial.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Clinton County.

Affirmed.

JONES, J., concurs.

Mr. PRESIDING JUSTICE GEORGE J. MORAN, dissenting:

This is not a case where a highly inflammatory argument is made and the defendant does not object; neither is it a case of an improper argument being made and the court promptly sustaining the objection and telling the jury to disregard it. In this case the prosecutor made improper argument deliberately and compounded the improper argument by making inflammatory remarks after the judge had ruled the argument was improper. Here, the argument not only prejudiced the defendant's rights, but the comments made after the court's rulings amounted to contempt of court.

Since in the majority's opinion the evidence in this case is overwhelming, the majority concludes that this prosecutorial misconduct was not reversible error. I have always believed that the measurement of evidence in a criminal case is a jury function. I also have always believed that both the innocent and guilty are entitled to a fair trial. This principle is so fundamental in a free society that it needs no citation of authority. I also have always believed that a defendant's right to a fair trial is never measured by the degree of his guilt as found by a court of review. Since the majority measures the defendant's right to a fair trial with the degree of his guilt as determined by the majority, I most vigorously dissent.