THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JIMMY DALE FOSTER, Defendant-Appellant.

Fifth District   No. 78-204

Opinion filed January 11, 1980.

Richard J. Wilson and Daniel D. Yuhas, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles V. Romani, Jr., State's Attorney, of Greenville (Raymond F. Buckley, Jr., and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Defendant was found guilty of attempted murder and sentenced to a term of imprisonment of 15 years after a jury trial in the Circuit Court of Bond County. Defendant prosecutes two appeals, one from his conviction and sentence and the other from the dismissal of his petition for post-conviction relief. Both appeals raise the same issues and have been consolidated for the purposes of oral argument and opinion. The issues raised by defendant are: (1) whether he was proven guilty beyond a reasonable doubt; (2) whether the trial court properly instructed the jury with respect to circumstantial evidence; (3) whether defendant was denied a fair trial because of the prosecutor's conduct at trial; (4) whether defendant was denied a fair trial because of the removal of his handcuffs in the presence of the jury; (5) whether the trial court abused its discretion in not assigning additional defense counsel; (6) whether defendant's sentence was excessive; and (7) whether it was improper for the trial court to impose a greater sentence on defendant than that offered by the State in plea negotiations.

At trial, the State presented evidence showing that on September 19, 1977, at approximately 4 p.m., State Trooper Ronald Gruner was attacked by defendant and his brother Jacob when he stopped to investigate a disabled vehicle report. Gruner testified that in response to a radio dispatch, he located a disabled vehicle on I-70 in Bond County. He was informed by the two occupants of the car that the car was out of gas. Upon Gruner's request, both men produced their driver's licenses which indicated that they were brothers. Gruner then returned to his squad car to arrange for a service truck and to run an identification check on the two men. Gruner was notified that the defendant's brother, Jacob, was wanted for a parole violation and that assistance would be sent. During the conversation with defendant and his brother, Gruner noticed the odor of alcohol on their breath so he proceeded to investigate this matter as a delaying tactic until another unit could arrive to assist him. As Gruner and defendant were discussing the sale of some radio equipment to raise bond money, Jacob attacked Gruner from the rear. Defendant went to the aid of his brother when Jacob called for assistance. Gruner testified that a struggle ensued during which defendant obtained Gruner's gun while defendant's brother was choking Gruner, causing him to loosen his grip on the gun. Gruner further related that defendant first pointed the gun at Gruner's chest and then handed the gun to Jacob when Jacob said he wanted the "pleasure of killing the so and so." According to Gruner, defendant's brother held the gun to Gruner's head and the defendant pinioned Gruner to the ground and said "now you SB, you've had it. I want you to see it coming." Gruner asserted that Jacob said "here it comes" and began pulling the trigger, holding the weapon against Gruner's temple. Jacob pulled the trigger repeatedly but the gun did not fire because it had a thumb safety which had not been released by Jacob, apparently because he was not aware of it. While defendant's brother was examining the gun to determine why it would not fire, Sergeant Pierce arrived at the scene. Defendant alerted his brother of Pierce's presence. Pierce testified that he saw the two men and Gruner struggling, that he fired a warning shot and then ran over to where the three men were grappling. When Sergeant Pierce fired the shot, defendant jumped off Gruner and Jacob dropped the gun. All three men then scrambled for the gun. Gruner and Pierce testified that Pierce approached the three men and ordered the brothers to drop the gun. Jacob then kicked Pierce in the groin. Pierce fired another shot, fatally wounding Jacob.

Pierce testified that Gruner's face was discolored and that he was short of breath. Two motorists, Lavon Mercer and Stanley Lutostanski, witnessed part of the incident and corroborated Gruner's testimony.

Defendant testified at trial to basically the same sequence of events; however, he denied that he handed his brother the gun and stated that he

was attempting to throw the gun away when his brother took it from him. He also testified to having little recollection of what occurred after his brother took the gun due to the amount of alcohol he had consumed that day. Upon cross-examination by the State defendant was repeatedly asked, over defense counsel's objection, whether certain witnesses for the State had lied.

Defendant appealed his conviction and during the pendency of his direct appeal filed a petition for post-conviction relief. The petition raised the same issues as those raised on direct appeal. A hearing on the petition was held on February 15, 1979, at which time defendant filed a supplemental petition for post-conviction relief raising the issue that defendant was unconstitutionally punished for exercising his right to jury trial. The trial court granted the State's motion to dismiss the petition.

Defendant first contends that he was not proved guilty of attempt murder beyond a reasonable doubt. He bases this issue on the failure of the State to produce any direct evidence at trial of a specific intent to kill Gruner.

■■ While no direct evidence as to defendant's intent was presented at trial, the circumstances of defendant's participation in the offense were more than sufficient to demonstrate that defendant had the requisite specific intent. Defendant's testimony that he did not hand the gun to his brother but, rather, his brother took the gun from him was contradicted by Gruner's testimony, which the jury chose to believe. The judgment of the reviewing court will not be substituted for that of the jury on questions involving the weight of the evidence or the credibility of the witnesses. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697.) Evidence adduced at trial of other actions of defendant also indicated that he possessed the requisite intent. Defendant beat Gruner on the chest while his brother choked Gruner to force him to loosen his grip on the gun. Further, defendant pinioned Gruner to the ground while defendant's brother held the gun to Gruner's head, attempting to fire it. These actions were sufficient to enable the jury to find defendant acted to aid his brother with the concurrent specific intent to kill Gruner. *Cf. People v. Mastin* (1976), 41 Ill. App. 3d 812, 354 N.E.2d 540.

■■ Defendant next contends that the trial court erred in refusing to give the jury the second paragraph of Illinois Pattern Jury Instructions, Criminal, No. 3.02 (1968) (hereinafter cited as IPI Criminal). IPI Criminal No. 3.02 provides:

"Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of [the] [a] defendant. Circumstantial evidence should be considered by you together with

all the other evidence in the case in arriving at your verdict.
[You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence.]"

The committee note following this instruction in the Illinois Pattern Jury Instructions states: "The second paragraph should be given only when the proof is *entirely* circumstantial." As stated in *People v. French* (1978), 59 Ill. App. 3d 353, 375 N.E.2d 502, the committee note is couched in terms limiting the times when it is permissible to give the second paragraph and not in terms of stating the times when that paragraph must be given. In the instant case, there was direct evidence of the defendant's participation in the offense and only the evidence as to his intent was circumstantial; therefore, the trial court properly refused to include the second paragraph of IPI Criminal No. 3.02 in its instructions to the jury.

■■ The defendant's third contention is that certain prosecutorial conduct denied him a fair trial. Specifically, defendant points to the prosecutor's repeated questions to defendant as to his assessment of the truthfulness of the State's witnesses. The State admits that the conduct of the prosecutor during the cross-examination of defendant was improper. We agree, particularly in view of the repeated objections by defense counsel which were sustained by the trial court. However, the defendant failed to raise this error in his post-trial motion and therefore such error is waived. (*People v. Hammond* (1977), 48 Ill. App. 3d 707, 362 N.E.2d 1361.) Further, the evidence of defendant's guilt was overwhelming, and the prosecutor's conduct did not rise to the level of plain error inasmuch as it did not result in substantial prejudice to the defendant. *People v. Cook* (1979), 71 Ill. App. 3d 134, 389 N.E.2d 616.

■ Defendant also points to the prosecutor's characterization of defendant as a "road vagabond" in closing argument as denying him a fair trial. The comment was an isolated comment which resulted in no prejudice to defendant. Where there is clear and convincing evidence of defendant's guilt, improper comments made by the prosecution will not require a reversal. It must appear that such remarks prejudicially influenced the jury or that the verdict would have been otherwise had the remarks not been made. *Cf. People v. Harris* (1975), 33 Ill. App. 3d 600, 338 N.E.2d 129.

■■ The defendant further assigns as error the trial court's failure to inquire into defense counsel's request for additional counsel once the court was aware that the State's Attorney would be assisted by two lawyers from the Attorney General's office. The trial judge appropriately instructed the prosecution that only one of the prosecuting attorneys was to conduct the examination and cross-examination of witnesses and to speak for the prosecution in matters before the court. It appears from the

record that defense counsel handled all facets of the trial in a competent and effective manner, and there is no indication that he was disadvantaged or overwhelmed by the presence of the State's Attorney and two additional attorneys at trial. Constitutional requirements concerning the right to counsel are satisfied unless it can be said that the representation given by counsel was so poor as to amount to no representation at all or to reduce the proceeding to a farce or mockery. Furthermore, it is the burden of the defendant to establish that his representation was of such low caliber as to reduce the trial to a farce. (*People v. Jones* (1978), 62 Ill. App. 3d 443, 379 N.E.2d 301.) In the instant case, defendant has failed to meet this burden.

■■ Defendant next contends that he was denied a fair trial by the removal of his handcuffs in the presence of the jury at the beginning of the trial. In chambers, the trial court stated that the proper procedure would have been to remove the handcuffs outside the presence of the jury and took steps to insure that the incident would not recur. The viewing of defendant in handcuffs was brief and unrepeated. While it is error not to remove defendant's handcuffs before his appearance before the jury, the fact that jurors may briefly see a defendant in handcuffs is not so inherently prejudicial as to require a new trial. (*Cf. People v. Dismuke* (1972), 3 Ill. App. 3d 553, 278 N.E.2d 152, where defendant was inadvertently seen by the jury in a detention cell.) Here the evidence of defendant's guilt is so overwhelming that any error resulting from permitting defendant to be seen by the jury in handcuffs was harmless error because the jury could not reasonably have found defendant not guilty. *People v. Jordan* (1974), 18 Ill. App. 3d 133, 309 N.E.2d 274.

■■ Defendant contends that his sentence of 15 years was excessive, citing his lack of a prior criminal record, his steady employment and his good character. The trial court at the sentencing hearing considered these factors and other appropriate factors, including the nature of the offense and defendant's failure to withdraw from the incident, each time there were opportunities to do so. The imposition of a sentence is within the discretion of the trial court and absent an abuse of discretion, which does not appear here, the sentence will not be altered upon review. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

■■ The final issue was raised by defendant only in his supplemental petition for post-conviction relief, in which he asserts that it was improper for the trial court to impose a more severe sentence on him after trial than was offered to him by the State during plea negotiations. We find defendant's contention to be without merit. The Supreme Court in *Corbitt v. New Jersey* (1978), 439 U.S. 220, 58 L. Ed. 2d 466, 99 S. Ct. 492, specifically stated that it is permissible to impose a more severe sentence after trial than if defendant had negotiated a plea, holding:

" 'While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"—and permissible—"attribute of any legitimate system which tolerates and encourages the negotiation of pleas." ' " (*Corbitt v. New Jersey* (1978), 439 U.S. 212, 220, 58 L. Ed. 2d 466, 475, 99 S. Ct. 492, 498.)

Moreover, the trial judge neither participated in the plea negotiations nor was he aware of them, thus the cases cited by defendant, *People v. Young* (1974), 20 Ill. App. 3d 891, 314 N.E.2d 280 and *People v. Dennis* (1975), 28 Ill. App. 3d 74, 328 N.E.2d 135, are inapposite to the case at bar. The trial judge explicitly based the sentence on the serious nature and character of the offense, making no reference to the defendant's election to stand trial.

For the foregoing reasons, the judgment and sentence of the Circuit Court of Bond County is affirmed.

Affirmed.

JONES, P. J., and KARNS, J., concur.